PFEIFFER V. SUSS, *Administrator, Appellant.*

73   245
37a   73
73   245
42a  165
73   245
.126   497
73      245
e102a²139
e102a²140

1.  **Administration**: EXHIBITION OF DEMANDS : WAIVER : FRAUD. There was nothing in the conduct of the administrator, in this case, which amounted to a waiver of formal exhibition of the plaintiffs' demand, or operated as a fraud upon the plaintiff.

2.  ——— : WHEN A DEMAND IS "LEGALLY EXHIBITED :" CLASSIFICATION OF DEMANDS. A claim is not "legally exhibited," against the estate of a decedent, within the meaning of section 5, page 102, Wagner's Statutes, (R. S. 1879, ? 188,) so as to authorize its allowance and classification until it has been shown to the administrator with a view to procuring its allowance. Exhibition for some other purpose, as for example, in the course of negotiations and with a view solely to compromise, is not such an exhibition as the statute contemplates, and cannot, therefore, be considered in determining the class to which a demand against the estate of a decedent should be assigned.

3.  ——— : ———. Section 5 contemplates something more than a mere delivery of the demand to the administrator. There must be something said, done or written to indicate that the intention is to procure its allowance.

4.  ——— : ADMINISTRATOR'S REPORT OF CLAIMS, NOT EVIDENCE FOR CLAIMANT. The report required by section 7, page 102, Wagner's Statutes, to be made by the administrator to the court at each settlement, showing what demands have been exhibited to him, is not evidence of which the claimant may avail himself to determine the class to which his allowance shall be assigned.

5.  ——— : CLAIM CANNOT BE MADE PIECEMEAL. A creditor having a demand against an estate consisting of several items, cannot divide it into several parts and exhibit it to the administrator or present it to the court for allowance by piecemeal.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Lee & Chandler* for appellant.

Walther did no other act by way of exhibiting plaintiff's claim within the first year than to hand to the administrator an imperfect statement of plaintiff's "commission" account against "A. Suss & Co.," and a copy of another account, which is called the " deposit" account, which was

also made out against "A. Suss & Co. ;" and these accounts were so handed to the administrator, simply and solely for the purpose of comparing them with the books of A. Suss & Co., to ascertain whether the books and these accounts harmonized, and the commission account when handed to the administrator was not carried out as to price or quantity; moreover, after these accounts were checked off by the books of the firm, Walther put them in his pocket and returned to New York. The "copy of the account" handed to the administrator, was not even made out against the estate of A. Suss, deceased, and under the circumstances surrounding its delivery, did not give to the administrator any such notice as the statute requires. It provides that the administrator shall be served with a "notice in writing, stating the amount and nature of his claim, with a copy of the instrument of writing or account upon which the claim is founded," and requires that distinct and definite information in writing shall be given to him that the party presenting it has a claim against the estate, setting forth "its nature, and the amount thereof, together with a copy of the account." There is no evidence in this record showing or tending to show any compliance with the requirements of this statute. The evidence plainly shows that neither Walther nor the administrator had any thought that plaintiffs were taking any steps toward establishing a classification of this demand against this estate. Wag. Stat., p. 102, § 1, par. 5 ; Ib., § 5 ; Ib., § 7 ; *Miller v. Janney*, 15 Mo. 265 ; *Bryan v. Mundy*, 14 Mo. 458; *Dorsey v. Burns*, 5 Mo. 334; *Richardson v. Harrison*, 36 Mo. 96 ; *Burton v. Rutherford*, 49 Mo. 258.

*Nathaniel Myers* for respondents.

1. There was a statutory exhibition of plaintiffs' claim during the first year. It was set forth in accounts, embodying all the items; these accounts were handed to the administrator as a statement of plaintiffs' claim, and

he was also superfluously told the account would be as-
serted against the estate.   All this was within a few days
after the administration began.   It is, however, suggested
by defendant's counsel that the sole purpose of Walther in
thus exhibiting plaintiffs' claim was to compare same with
defendant's books.   The defendant himself understood the
exhibition differently, because he reported the claim as ex-
hibited in the first year when he made his first annual set-
tlement.   Moreover, were there anything in this suggestion
it was for the trial court to determine the effect of the tes-
timony.

2.   It was not the intention of the 5th section of the
statute, (1 Wag. Stat., 102, § 5,) to make the method there
indicated the exclusive mode of "legally exhibiting" a
claim, and a strict and literal compliance with every detail
of its requirements is not indispensable.   The word "may"
here is not synonymous with "must," but is used in its
ordinary signification.   *Minor v. Bank*, 1 Pet. 64; *N. Y. &
E. R. R. Co. v. Coburn*, 6 How. Pr. 224; *Cutler v. Howard*,
9 Wis. 309; *Wheeler v. Chicago*, 24 Ill. 105.   This section
is directory only.   *St. Louis Co. Ct. v. Sparks*, 10 Mo. 117.
Similar statutes in other states have received this construc-
tion.   *Grimes v. Bush*, 16 Ark. 647; *Borden v. Fowler*, 14
Ark. 471; *Maddin v. State Bank*, 13 Ark. 276; *Grimes v.
Booth*, 19 Ark. 224; *Goodrich v. Conrad*, 24 Iowa 256; *Wile
v. Wright*, 32 Iowa 451; *Wells v. Miller*, 45 Ill. 35; *Calanan
v. McClure*, 47 Barb. 209; *Gansevoort v. Nelson*, 6 Hill 389;
*Johnson v. Corbett*, 11 Paige 269; *Perry v. West*, 40 Miss.
237; *Hallett v. Branch Bank*, 12 Ala. 195; *Harrison v. Jones*,
33 Ala. 258; *Frazier v. Paytor*, 36 Ala. 694; *Flinn v.
Shackleford*, 42 Ala. 204; *Pollard v. Scears*, 28 Ala. 487;
*Buckett v. Janiesot*, 2 Humph. (Tenn.) 567; *Ellis v. Carlisle*, 8
Sm. & M. (Miss.) 553; *Little v. Little*, 36 N. H. 224; *Teb-
betts v. Tilton*, 31 N. H. 273; *Trigg v. Moore*, 10 Texas 197;
*Kyle v. Kyle*, 15 Ohio St. 20; *Fillyau v. Laverty*, 3 Fla. 106;
*Ellison v. Allen*, 8 Fla. 206.   It would appear to us that in
Missouri, where the powers of the administrator in this

regard are absolutely unimportant and trivial, where really nothing follows upon the particular mode of exhibiting the demand, it is rather straining a point to ignore settled rules of construction only in order to defeat a just claim ! The sole object of the exhibition to the administrator is to give him information. The sole object of the information is to enable the administrator to reserve for the claims of whose existence he is informed, sufficient to pay a dividend on them in case they are ultimately allowed by the court.

3.   If an administrator fraudulently keeps a creditor from exhibiting his claim within a year, and misleads him into the belief that he will lose nothing by waiting two years before exhibiting his claim, and that he has the latter period instead of one year in which to exhibit it—that he need do nothing further beyond what he has already done, except to get the claim allowed by the court any time within two years, such a fraud is like all others, both in law and equity, unavailing ; and neither administrator, creditor nor heir, can profit by an advantage thus fraudulently obtained.   Simon Suss did entertain that fraudulent purpose, and did misrepresent the facts and delude and lull Walther, and through him all the non-resident creditors, into belief that he had full personal knowledge of their claims, and, therefore, did not desire any further formal exhibition ; that they had done all that was necessary except to have the court pass on the claim, and that they would lose nothing by waiting until the second year before presenting it to the court.

4.   Even if the court should not be satisfied of the active fraud, the administrator is estopped from setting up that the claims were not properly exhibited to him within one year.   *Garnhart v. Finney*, 40 Mo. 462; *Chouteau v. Goddin*, 39 Mo. 250; *Newman v. Hook*, 37 Mo. 207 ; *Taylor v. Zepp*, 14 Mo. 482 ; Bigelow on Estoppel, 437, 458; *Ex Parte Rockford, etc., R. R. Co.*, 1 Lowell 345 ; *Gregg v. Von Phul*, 1 Wall. 274; *Ridgway v. Morrison*, 28 Ind. 201 ; *McClellan v. Kennedy*, 8 Md. 230; *Swenson v. Walker*, 3 Texas

93; *Rogers v. Johnson*, 70 Pa. St. 224; *Preston v. Mann*, 25 Conn. 118; Bigelow on Estoppel, (2 Ed.) 442; *Camp v. Moseley*, 2 Fla. 171; *Sample v. Lipscomb*, 18 Ga. 687; *Jennison v. Hapgood*, 10 Pick. 77; *Thomas v. Brooks*, 6 Texas 369; *Horn v. Cole*, 51 N. H. 287; *Stevens v. Dennett*, 51 N. H. 324.

The administrator waived both expressly and impliedly any further exhibition than such as was made. He had power to do this. *North v. Walker*, 66 Mo. 453; *s. c.*, 2 Mo. App. 174; *Horwitz v. Mut. Ins. Co.*, 40 Mo. 557; *Grimes v. Bush*, 16 Ark. 647; *Borden v. Fowler*, 14 Ark. 471; *Calanan v. McClure*, 47 Barb. 206; *Gansevoort v. Nelson*, 6 Hill 389; *Leake v. Sutherland*, 25 Ark. 221; *Kincheloe v. Gorman*, 29 Mo. 421; *Kyle v. Kyle*, 15 Ohio St. 20.

6. There was certainly a statutory exhibition of the cash·claim of $1,767.67, and it was so understood by the administrator; for, in his first annual report to the probate court, he reported that claim as having been in fact exhibited to him in the first year by the plaintiffs.

HENRY, J.—This cause originated in the probate court of St. Louis county, on the presentation by plaintiffs of a claim for allowance against the estate of Alex. Suss, deceased, which was allowed and placed in the fifth class of demands. On appeal successively to the circuit court and court of appeals, the judgment was affirmed, and the administrator, defendant, has appealed from the judgment to this court. The only question to be determined is, whether there was error in placing the demand in the fifth class.

Letters of administration were granted to Simon Suss on the 2nd day of February, 1875, and notice thereof was duly given on the next day. Formal notice of the intention to exhibit the demand for allowance in the probate court was not given to defendant until the 26th day of May, 1876, more than one year after the date of publication of said notice of administration, and if this were all, no doubt could be enter-

1. ADMINISTRATION: exhibition of demands: waiver: fraud.

tained that the allowance was improperly classed. Plaintiffs, however, rely upon an exhibition of said demand to the administrator, which, it is alleged, occurred within the first year of the administration, and is evidenced by the following facts:

Philip Walther, a member of the plaintiff firm, came to St. Louis, representing all the eastern creditors of the intestate, with a view to compromising their claims, it being understood by the eastern creditors that the estate was insolvent. He had the account of his firm against the estate, except the prices at which the goods were sold, and together with the administrator examined the books of the deceased to ascertain the prices, which were then placed upon the account. He made a proposition of compromise to the administrator, which the latter rejected, and he then left St. Louis with the understanding, as he testified, "that he was to see the eastern creditors, get their views and make report." The only reference to the allowance of the claim against the estate made in any of the interviews between him and the administrator in St. Louis, was the following: "I, Walther, asked Suss, the administrator, what I had to do to establish those claims in case no settlement was made? He told me all I would have to do was to have the creditors go before a notary and make affidavit to the claims, and send them to him or any one else, to have them attended to." He further states that "at the time of that visit to St. Louis nothing was said as to how long I had to have claims allowed." In a letter from Walther to the administrator, of November 27th, 1875, he says: "Now the creditors press me because the claims have to be filed, and they ordered me to write to a lawyer for instruction what is necessary or what the court requires." He says that in January, 1876, in the city of New York, the administrator told him he had two years in which to prove claims; and yet in November, 1875, the plaintiffs wrote to Nathaniel Myers, an attorney of St. Louis, asking him to take charge of the claims of eastern creditors, and inquiring of him

what the court required to verify the claims, and for particular information as to the steps to be taken. Myers answered this letter November 30th, 1875, agreeing to attend to the claims and giving them instructions as to affidavits, etc., and urging their attention to it at once, in order that he might get them allowed at the coming term of the court. Plaintiff delayed until April 15th, 1876, when the claims were forwarded to Myers.

On these facts, was there an exhibition of the plaintiffs' demand for allowance ? If the administrator, out of court, could have waived a formal exhibition of the demand, was there anything in his conduct which amounted to such waiver, or operated as a fraud upon plaintiffs?

The account was not presented to him for allowance, but solely with a view to a compromise of that and other 2. ——: when a eastern claims. In the interviews between demand is "legally exhibited:" Walther, representing his firm and other classification of demands. eastern creditors, and the administrator in St. Louis, nothing was said as to the length of time the creditors had to present their claims, nor was there any conversation in regard to a presentment of the claim for allowance then. The only subject considered was a compromise, and Walther took with him the accounts of his firm against the estate back to New York, where " he was to see the eastern creditors, get their views and make report." While it is true that the administrator told plaintiffs in New York that they had two years in which to present their demands for allowance, this occurred in January, 1876, and in the November previous they had written to and employed an attorney at St. Louis to attend to their claim, and received his answer with instructions how to proceed ; and yet they delayed action until April 15th, 1876, and now seek to avoid the consequences of their negligence by an alleged reliance upon the statement of the administrator that they had two years to exhibit their claim.

Besides, the statement of the administrator was true,

and he only failed to state in addition that if not presented in one year after notice of administration given, the claim would be placed in the sixth class. They had their attorney and should have followed his advice, and cannot shield themselves behind the true but meagre information given by the administrator. They had no right to rely upon his advice or information rather than on that of their attorney, who either did inform or should have informed them of the fact which it is now alleged the administrator withheld. The conversations between the administrator and Walther, their correspondence and their conduct in finally formally exhibiting their claim in May, 1876, all show that the plaintiffs' account was never exhibited for allowance but only for compromise, and that there was no purpose to present it for allowance until after Walther returned to New York to consult the other creditors and until the negotiations for a compromise were at an end. Walther, in his testimony, says: " I asked Simon, the administrator, what I had to do to establish those claims in case no settlement was made?" Is it not clear from this that he then had no present purpose to present his claim for allowance, but intended to wait and see how the negotiations for a compromise would result before exhibiting his claim for allowance? We think it manifest from this and the other testimony above detailed, that this was his purpose.

The books of the intestate showed the exact state of the account between him and the plaintiffs, and the exhibition of the account to the administrator, who was the intestate's book-keeper, was not the first information he had of that indebtedness. Walther went to those books to ascertain the prices at which his firm had sold the goods to the intestate. The amount was shown to the administrator with no view to a proceeding to have it allowed, but only in course of negotiations for a compromise. A creditor of the estate meeting the administrator and showing him an account or note he holds against the estate without more, cannot be considered as exhibiting it within the meaning

of the statute, even if a claim can be legally exhibited otherwise than as is provided by section 5, Wagner's Statutes, 102. In any event it must be presented or exhibited with a view to its allowance against the estate, and not for some other purpose only. We do not decide, however, that it can or cannot be exhibited in any other way than that pointed out by section 5, *supra*, and have elaborated the question considered and decided more than we would have thought necessary if three highly respectable courts had not come to a conclusion different from that to which we have been led. The judgment is reversed and the cause remanded, with directions to the probate court to place plaintiffs' allowance in the sixth class of demands against the estate of Alex. Suss, deceased. All concur.

### On Motion for Rehearing.

HENRY, J.—The filing of a motion for a rehearing has determined us to pass upon a question which at first we did not deem it necessary to decide.

The plaintiffs' demand was for $1,767.67 cash advanced, and $1,002.75 for merchandise sold. That part of the account for the money so advanced was separate and in perfect form, and was delivered by Mr. Walther to the administrator a few weeks after the death of the intestate; and it is contended that this was a statutory exhibition of that claim. It was not delivered for allowance or with a view to its classification. There is not a particle of evidence to show it, while the testimony is abundant that it was delivered for another and different purpose exclusively; and all that was said on this subject in the opinion heretofore delivered, is applicable alike to the demand for money and that for goods sold.

But it is now contended that inasmuch as the administrator in his annual settlement mentioned this claim for money as "an account presented to the administrator within the first year, but not yet proved," he understood

it to have been a statutory exhibition of the claim. It does not matter what the administrator's understanding was. The statute provides for and declares what shall be a legal exhibition of a claim against an estate in sections 3, 4 and 5, Wagner's Statutes, 102. Section 5 is as follows: "Any person may exhibit his demand against such estate by serving upon the executor or administrator a notice in writing, stating the amount and nature of his claim, with a copy of the instrument of writing or account upon which the claim is founded; and such claim shall be considered legally exhibited from the time of serving such notice." By section 7 every executor and administrator is required to keep a list of all demands thus exhibited, classing them, and make return thereof to the court at each settlement. Section 5 contemplates something more than a mere delivery to the administrator of a copy of the account; and it is only accounts exhibited as is required by section 5 of which he is to keep a list and make return thereof to the court. If an itemized copy of the account is delivered, still there must be something additional said, done or written to indicate the object of the delivery, and a delivery for another and different purpose than that of classification or allowance can upon no principle of law be held a compliance with the statute. Section 5 provides the statutory mode of exhibiting the demand, and the person so exhibiting it had, until the revision of 1879, three years thereafter within which to establish the demand, provided it was exhibited within two years after letters of administration were granted; but when he desires to establish his demand, he is required again to deliver to the administrator a written notice containing a copy of the instrument of writing or account, and stating that he will present it for allowance at the next term of the court. § 15, p. 104. It will be observed that in one respect the notice under the 5th section requires more than that to be given under the 15th. The latter must contain a copy of the account or instrument of writing upon which the claim is founded;

the former, in addition, must state the amount and nature of the claim.  By writing or in open court, the adminis- trator may waive the service of the former notice (section 17) ; but there is no such provision in regard to the notice required by section 5.  Yet it was intimated in *Milan v. Pemberton*, 12 Mo. 599, that a waiver of the notice for allow- ance would also amount to an exhibition of the claim, and such, it would seem, has been the practice for many years, and we are not to be understood as condemning it by any- thing herein.  Exhibiting a claim for classification and presenting it for allowance, are different steps.

The report of claims by the administrator, under sec- tion 7, is not evidence upon which plaintiffs can rely, as it is not made for the purpose of classifying demands.  *Miller v. Janney*, 15 Mo. 268.  In *Burton v. Rutherford*, 49 Mo. 258, the court said, Adams, J. :  "A party can only exhibit his claim against an estate in the manner indicated by the statute." To the same effect are *Richardson v. Harrison*, 36 Mo. 96 ; *Bryan v. Mundy*, 14 Mo. 458; *Spaulding v. Suss*, 4 Mo. App. Rep. 541 ; *Milan v. Pemberton*, 12 Mo. 599.  If plaintiffs had delivered their account to the administrator as an exhibi- tion of the demand for classification and as an initial step in a proceeding to have it allowed, a plausible argument might be made in their favor, but in the face of the decis- ions of this court it would be plausible only.  On the evi- dence in this case, however, there is nothing upon which to base a conclusion that any such purpose was in the mind of Mr. Walther, but on the contrary, that the account was delivered with a different intent and for a different purpose, and was not then by him, nor afterward by his attorney, regarded as an exhibition of the claim for classification, or with any reference to proceedings in the probate court.

Both accounts are treated as one in the notice given in 1876.  The whole indebtedness was one account, and the creditor has no right to divide his ac- count into several parts and exhibit it or

*margin notes:*
4. ——: adminis- trator's report of claims, not evi- dence for claim- ant.

5. ——: claim cannot be made piecemeal.

present it for allowance by piecemeal. *Wagner v. Jacoby*, 26 Mo. 532; *Union R. R. & Trans. Co. v. Traube*, 59 Mo. 358.

The intestate's books showed all that was on the account, and more in plaintiffs' favor than the account presented disclosed, and it would be just as proper to hold, where such is the fact, that no necessity exists for any exhibition of the claim, as that the facts of this case constituted such an exhibition of the demand as the statute requires. A re-examination of this cause on the motion for rehearing, has but confirmed us in the opinion that the probate court committed an error in placing the claim in the fifth class of demands, and the motion is overruled. All concur.