[Civ. No. 5466.   First Appellate District, Division One.—December 22, 1927.]

LEONA PEARL STANDIFORD, Respondent, v. HARRIET E. CANTRELL, Executrix, etc., Appellant.

T. J. Sheridan and Harry L. Horn for Appellant.

I. M. Peckham and Sherman G. Blood for Respondent.

KNIGHT, J.—A verdict for the sum of $2,495 was awarded against defendant, as executrix of the last will and testament of Sarah Jane Hilliard, deceased, in an action based upon an oral contract the decedent is alleged to have made to pay plaintiff for services rendered decedent during her last illness, in submitting to a blood transfusion and for the damages plaintiff might suffer as a consequence of said operation. Pursuant to a conditional order made by the trial court on motion for a new trial, plaintiff remitted $995 of the sum awarded by the jury, thereby reducing the amount of the judgment to $1,500, from which judgment defendant appeals.

Briefly stated, the grounds urged for reversal are that no valid claim for damages consequent to plaintiff's services was presented against the decedent's estate, and that therefore plaintiff was limited in her action to a recovery of the reasonable value of the services rendered; also, that the elements of damage pleaded were not sustained by the proof; that the court erred in refusing to give certain instructions

proposed by defendant; that excessive damages were awarded under the influence of passion and prejudice, and that consequently the court erred in not granting a new trial.

The essential facts are as follows: For some time prior to Mrs. Hilliard's death, which occurred on December 9, 1922, she suffered from a malignant ailment necessitating treatment by blood transfusions. She had undergone four transfusions, and was unable to obtain more of the particular type of blood required. Plaintiff and her parents were friends and acquaintances of Mrs. Hilliard, and during the early part of October, 1922, Mrs. Hilliard told Mrs. Standiford, plaintiff's mother, of her serious condition and asked if she would furnish the necessary blood for a transfusion. Mrs. Standiford's husband objected to her doing so, and finally Mrs. Hilliard persuaded plaintiff, who was present, to submit to the transfusion. There is some conflict as to the exact words used at that time, but there is ample testimony to show that plaintiff's consent was given only after Mrs. Hilliard had made promises to the effect that if the service was rendered she would "make it right" with plaintiff; that plaintiff "would be well taken care of and not be out anything"; that the operation would not require an incision to be made, the blood being taken, as Mrs. Hilliard explained it, through a needle, and would result in no pain and leave no scar; that plaintiff would not lose more than three days from her employment; that Mrs. Hilliard would bear all of the hospital and other expenses which might be incurred by plaintiff as a consequence of the transfusion, and would "stand by" plaintiff, "take care" of her and "do the right thing" by her. At first plaintiff was not inclined to enter into the arrangement, but owing to Mrs. Hilliard's importunities and critical condition she finally consented. The next day plaintiff's blood was typed and proved satisfactory; and the transfusion operation was performed. But in order to perform a successful direct transfusion, it became necessary for Mrs. Hilliard's physician to cause an incision to be made in plaintiff's arm an inch or more in length, and to destroy one of the veins, so as to allow the blood to pass directly from the vein of the "donor" to the vein of the patient through a paraffine receptacle. Approximately a half pint of plaintiff's blood was taken. The physician tes-

tified that before attempting to operate he was "rather skeptical as to taking very much of her blood," on account of plaintiff's youth, but upon being assured by her that she was of age and was willing to submit to the transfusion he proceeded with the operation.

The evidence further shows that upon arriving home after the operation plaintiff was in a very weakened condition, and collapsed after entering the house. Later her mother assisted her to bed, and it was three days before she was about. As a result of the transfusion she continued to suffer much pain; the wound, although stitched, did not heal readily, and she remained under the daily treatment of Mrs. Hilliard's physician until about the date of Mrs. Hilliard's death, at which time a "keloid" formation developed on plaintiff's arm. Thereupon she consulted a physician of her own choosing, who immediately sent her to the hospital and operated for the removal of the keloid, which he described as being about an inch long and half an inch wide. Upon recovering from the anaesthetic she found her arm in a cast which extended from the elbow to the wrist, reinforced with steel braces on the upper and lower sides, which she was compelled to wear for a month. During that time an infection started in the wound which required daily treatment by the doctor for three or four months. With reference to plaintiff's condition at the time of trial, her physician testified that she was still suffering pain; that as a result of the operation a scar tissue had developed affecting one of the nerves, causing continuous pain along the radial side of the arm, and that to relieve the pain another operation was necessary which might eventually require the process of skin grafting.

Prior to the blood transfusion operation plaintiff had been employed in a telegraph office at a minimum wage of $16 a week. The trial took place in November, 1923, approximately thirteen months after the transfusion, and the evidence shows that from the time of the operation to the time of trial plaintiff was able to work only a month and was then compelled to give up on account of the painful condition of her arm. The actual expenses incurred by plaintiff for medical and hospital treatment following the transfusion amounted to $285, and besides she suffered loss of wages for approximately a year, amounting to about $776. It

would therefore appear that the total amount she was allowed by the judgment for her services in submitting to the transfusion operation, for the continuous pain suffered, the scar she carried and for the payment of the medical and hospital expenses to be thereafter incurred was approximately $439.

The claim presented against the estate of the decedent was in the following form: "To reasonable value of services in supplying a blood transfusion to said deceased and to damages consequent thereupon, $2500," but not being supported by the affidavit required by section 1494 of the Code of Civil Procedure the claim was returned to the claimant for the purpose of having such affidavit attached. After conforming to the legal requirement mentioned the claim was again presented, and on February 19, 1923, was allowed by the executrix for the sum of $15. It does not appear that said claim was ever approved by the judge of the court, however, and four months subsequent to the filing of the action herein the executrix endeavored to cancel the allowance by indorsing thereon: "The within claim is rejected this 5 day of July, 1923."

The allegations of the complaint relating to the making of the contract and its terms were as follows: "On October 23, 1922, at the City and County of San Francisco, Sarah Jane Hilliard employed plaintiff to submit to a transfusion of blood from this plaintiff to said Sarah Jane Hilliard, to the extent of one pint or more, on the following terms: Plaintiff agreed to submit to certain blood tests at the St. Francis Hospital, in the City and County of San Francisco, and if said blood tests proved plaintiff a satisfactory subject for making the said blood transfusion, said plaintiff was to submit to a blood transfusion and supply to Sarah Jane Hilliard not less than one pint of plaintiff's blood, and in consideration therefor, the said Sarah Jane Hilliard agreed to pay to this plaintiff such sum of money as would 'make it right' with this plaintiff, and to pay all expenses made necessary by said blood transfusion, and save plaintiff harmless from damage or expense incidental thereto or resulting therefrom. And the said Sarah Jane Hilliard then and there, as part of said transaction, warranted to this plaintiff that the said blood transfusion would not require any cutting or incision in this plaintiff; that it would not hurt plaintiff

at all; that plaintiff would not be sick or indisposed, and that the said blood transfusion would leave no scar."

We are unable to sustain defendant's contention that the form of claim presented limited plaintiff's recovery to the reasonable value of the services rendered and precluded any recovery for damages consequent thereto. The facts hereinabove set forth prove beyond question, we think, that Mrs. Hilliard made an express contract to compensate plaintiff, first, for services as "donor" in submitting to the blood transfusion, the value of which service was left open for further determination; and, secondly, for all damages proximately resulting from such service, the amount of which obviously was not ascertainable at the time the contract was made. The claim as presented fairly covered both provisions of the contract, it being expressly set forth in the claim that the demand was for the reasonable value of the services rendered and for damages consequent thereupon.

Nowhere does the code define the precise form of a claim (*Doolittle* v. *McConnell,* 178 Cal. 697 [174 Pac. 305]; *Elizalde* v. *Murphy,* 163 Cal. 681 [126 Pac. 978]; *McGrath* v. *Carroll,* 110 Cal. 79 [42 Pac. 466]); and it is held that it need not state facts with all the precision and detail of a complaint, nor is the sufficiency of a claim to be tested by the rules governing pleadings · (*Pollitz* v. *Wickersham,* 150 Cal. 238 [88 Pac. 911]; *Thompson* v. *Koeller,* 183 Cal. 476 [191 Pac. 927]). The purpose of presenting a claim is merely to advise the representative of the estate and the judge before whom the claim comes for allowance of its nature and amount; and if, when the claim is presented, the representative of the estate is uncertain as to any matter connected therewith, the insufficiency should be pointed out or request made for further particulars or details with reference thereto; otherwise, even in cases of general rejection, objections to the formal insufficiency thereof are deemed to be waived (*E. Martin & Co.* v. *Brosnan,* 18 Cal. App. 477 [123 Pac. 550]; *Smith* v. *Furnish,* 70 Cal. 424 [12 Pac. 392]; 11 Cal. Jur. 702). As shown, the executrix here allowed the claim as presented without question, except as to its amount; and it must be inferred from such allowance that the nature of the demand was understood and the form of the claim approved.

■ That portion of the claim relating to damages consequent to the services did not, in our opinion, constitute a "contingent" claim, for the reason that liability for all elements of damage proximately resulting from plaintiff's services became absolute at the time the contract was made and did not depend upon the happening of any future possibility (*Verdier* v. *Roach,* 96 Cal. 467 [31 Pac. 554]). But even assuming that a portion of the damages claimed was not definitely ascertainable in amount at the time the claim was presented, and that consequently that portion of the claim be deemed to be contingent, the entire claim for damages was not invalidated thereby, and the only effect thereof would be to require the particulars of the contingent portion to be set forth (sec. 1494, Code Civ. Proc.) ; and, as already pointed out, defendant waived such requirement by failure to object to the sufficiency of the claim on any ground prior to its allowance (*Western States Life Ins. Co.* v. *Lockwood,* 166 Cal. 185 [135 Pac. 496]). We conclude, therefore, that the form of the claim presented was sufficient to cover that portion of Mrs. Hilliard's contract to pay plaintiff all damages which she might suffer as a consequence of her services and that the action instituted by plaintiff was founded on and conformed to the claim as presented.

■ The contention defendant makes that the evidence is insufficient to prove the amount of damages awarded is directed chiefly to the question of the reasonable value of the services. In this connection defendant offered the testimony of physicians and hospital executives to prove that the customary price paid for transfusions ranged from $25 to $75. But it should be kept in mind that the action herein is based upon the terms of an express contract and not upon the ordinary *quantum meruit.* The jury was therefore not restricted in fixing the value of the service to the amounts customarily paid, but was entitled to take into consideration all of the peculiar circumstances under which the contract in question was entered into. With respect thereto, the evidence shows that in the vicinity of San Francisco blood for transfusion purposes was usually purchased from men in the military service stationed near by, who are entitled to free hospitalization and medical treatment by the

government in case of illness. The blood for the previous transfusions was so obtained for Mrs. Hilliard; but as she stated to plaintiff she was unable to obtain any more of the particular type of blood necessary for her treatment, and that consequently her condition was becoming extremely grave; and it was under these circumstances that plaintiff consented to submit to the operation. But in any event, assuming that she be allowed only $75 for the service, it would still leave only $364 to compensate her for a year's suffering, and the scar she will bear; to defray the medical and hospital expenses to be incurred by reason of the future operation to relieve the pain, and cover loss of time while undergoing and recovering from the operation.

With reference to the trial court's order directing the remission of a portion of the damages awarded by the jury, the code provides that where it appears that excessive damages have been given under the influence of passion or prejudice, a new trial may be granted (Code Civ. Proc., sec. 657); but it has long since been settled that the court may, if the amount awarded be excessive, make a conditional order denying the motion if the prevailing party will consent to remit the excess and granting it in the absence of such consent (*Bentley* v. *Hurlburt*, 153 Cal. 796 [96 Pac. 890]); and, furthermore, it is not to be assumed from the making of such conditional order that the trial court concluded that the verdict was the product of passion or prejudice (*Swett* v. *Gray*, 141 Cal. 63 [74 Pac. 439]). In the present case defendant does not point out, nor have we been able to discover, any facts or circumstances which would justify the determination that as a matter of law the award of damages by the jury here was influenced by passion or prejudice.

The refusal of the court to give defendant's proposed instructions numbered 3, 4, 5, 6, 8, and 9 was not error. They were all based upon the legal proposition contended for by plaintiff that the claim plaintiff presented against the estate did not include a demand for damages resulting from the services in submitting to the blood transfusion and that therefore plaintiff was not entitled to any award therefor. We have already pointed out that this contention is without merit.

In our opinion defendant has not shown error, and the judgment is therefore affirmed.

Tyler, P. J., and Cashin, J., concurred.