KUAKINI HOSPITAL AND HOME *v.* MARGARET E. YAMANOHA AND THE FIRST TRUST COMPANY OF HILO, LTD., EXECUTORS OF THE ESTATE OF RICHARD A. YAMANOHA, DECEASED.

No. 4121.

June 16, 1961.

Tsukiyama, C. J., Cassidy, Wirtz, Lewis
and Mizuha, JJ.

OPINION OF THE COURT BY LEWIS, J.

This is an appeal by plaintiff from a summary judgment dismissing the action on the ground that plaintiff's

averred claim, for "hospitalization, services rendered and supplies furnished by plaintiff to the deceased," Dr. Richard A. Yamanoha, is barred by the nonclaim statute, R.L.H. 1955, § 317-23. That statute provides that any claim "not presented within four months from the first day of publication of the notice [to creditors], * * * shall be forever barred and the executor or administrator shall not be authorized to pay it."

Dr. Yamanoha died on August 21, 1957. Defendants-appellees, Margaret E. Yamanoha and First Trust Company of Hilo, Ltd., the coexecutrix and coexecutor of his estate, hereinafter referred to as the "executors," duly published in the Hilo Tribune-Herald, commencing on September 28, 1957, a notice to creditors of the decedent requiring them to present their claims to the executors at 64 Keawe St., Hilo. This is the address of First Trust Company of Hilo in the County of Hawaii. The probate proceedings were had in the Third Circuit, County of Hawaii, and the Hilo Tribune-Herald, in which the notice was published, is a newspaper of general circulation in that county, as provided by R.L.H. 1955, § 213-10. Plaintiff, however, has its place of business in the City and County of Honolulu.

During the four months' period plaintiff, by mail addressed to the deceased, sent out on more than one occasion a statement in the following form:

"KUAKINI HOSPITAL AND HOME
347 No. Kuakini St.
Honolulu, Hawaii

Nov. 9, 1957

Dr. Richard A. Yamanoha
57 Hina Street
Hilo, Hawaii

In-Patient Kuakini Hospital—Balance.............. $2,292.74
88.95

Total ------------------------------------------------- $2,381.69"

These statements were forwarded through the mail to the widow, one of the executors, reaching her at her then residence in Hilo, a different address from that used by plaintiff. According to the widow's uncontested answer to written interrogatories the statements "were thrown away in the rubbish when received."

The four months' period expired in January, 1958. A verified claim filed by plaintiff with the clerk of the court on March 11, 1958, with copies to the executors, was rejected by the executors on the ground that time for filing had expired, and this suit followed.

The executors, defendants herein, contend that the steps taken by plaintiff during the four months' period were insufficient for compliance with the statute, that the executors were not called upon to act with respect thereto, and that no steps taken after the expiration of the four months' period could perfect the claim. Plaintiff contends that the widow, who also is sole beneficiary under the will of deceased, failed to carry out her fiduciary duty to plaintiff as a creditor of deceased, that at the trial it would have appeared that she was fully informed in respect of the indebtedness of deceased to plaintiff, that enough was done during the four months' period to save the claim, that if more information should have been furnished by the plaintiff then the executors should have given plaintiff opportunity to do so, and that it is not too late for plaintiff to do so, even now, by amendment of the claim.

Primary emphasis is put by the executors on two things: (1) the absence of any information in the statement received by the widow, during the four months'

period, as to the time when the hospitalization occurred, and (2) the statutory requirement that a creditor's claim shall be presented "with proper vouchers or duly authenticated copies thereof." However, this case does not require consideration of the necessity of furnishing—or the effect of not furnishing—the above. Whether the onus of calling for further information can be placed on the executor by a paper which is insufficient in the above respects, is a question we do not reach.

To "present" his claim a creditor must, as the first requisite, seek payment out of the estate. *First National Bank* v. *Love,* 232 Ala. 327, 167 So. 703, 713; *White* v. *Blair,* 234 Ala. 119, 173 So. 493; *Dime Savings Bank* v. *McAlenney,* 76 Conn. 141, 55 Atl. 1019; *Pfeiffer* v. *Suss,* 73 Mo. 245; *Horicon* v. *Langlois' Estate,* 115 Vt. 81, 52 A. 2d 888.

This rule was recognized in *Bishop Co.* v. *Williams,* 9 Haw. 299 (1893). The case was decided under the Act of June 23, 1868, S.L.H. 1868, p. 51, which was different from the present nonclaim statute in several respects but like the present statute required that a creditor of the deceased present his claim to the executor within a stated time after publication of notice or be forever barred. The claim was based on deceased's endorsement of a note, which after his death was dishonored, and a notary thereupon, within the period fixed by the then nonclaim statute, addressed a notice of protest to the executors, stating therein that "the holders look to you for the payment [of the note]." The court said at 302-303:

"It is urged by defendants' counsel that the notice of protest is not sufficient presentation of a claim, because it was only intended to fix the liability of the indorser. We fail to see, even if this was its primary object, why it cannot also be considered as the presentation of a claim within the statute of non-claim.

It afforded them all the particulars of the claim, as to character and amount. It also states a claim that 'the holder[s] look to you for the payment thereof,' a statement unnecessary to fix the liability of the indorser."

It is well settled that knowledge of the claim on the part of the executor will not excuse presentation of the claim. *Estate of S. Kaiu,* 17 Haw. 514, 516 (1906). Presentation is required even if the claim appears from the books and papers of the deceased, who conceded his indebtedness. *Pfeiffer* v. *Suss, supra.* The nonclaim statute would be nullified if a creditor who did not seek payment from the estate were to be treated as if he had, merely because he continued to send out bills one of which came into the hands of the executor, confirming what he already knew.

In *Dime Savings Bank* v. *McAlenney, supra,* the court said:

"* * * there is no finding of any act done or word spoken by the plaintiff, or by any one in its behalf, which was either actuated by a purpose to put this note in a position to claim payment out of the estate, or which evidenced, or was intended to evidence, any such purpose. The finding is barren of fact or incident transpiring prior to the expiration of the time limited for the presentation of claims indicative of an intention on the plaintiff's part to establish for its claim a status which should entitle it to share in the division of the assets of the estate. All that appears is that at some time unknown, and in some way unknown, and either with or without purpose, knowledge of the existence of the claim passed from the plaintiff to the executor. This we have heretofore held is not enough." (p. 1021.)

In the present case, reliance is upon a statement

addressed to the deceased, not to the executors or either of them, at an old address, not the place designated in the notice to creditors for the presentation of claims. It was an ordinary statement of account. It came into the hands of the widow, the coexecutrix, having been forwarded through the mail. The most that can be said is that the coexecutrix exercised her authority as such in receiving it in the mail. She did not treat it as a matter requiring her official attention in her fiduciary capacity. It did not purport to be such. There was not expressed or implied any intention to look to the estate for payment. We hold that there was no presentation of the claim within the four months' period. This is not to be taken as holding, tacitly or otherwise, that the statement here involved would have satisfied the statutory requirements of a valid claim, preventing the bar of the nonclaim statute from applying, if it had not been for the above-enumerated circumstances. In view of our holding that not even the first requisite was met, and as we have said, we need not and do not reach the question whether this paper was fatally defective in other respects.

In *Coots* v. *Morgan's Adm'r*, 24 Mo. 522 (1857) it was held that the creditor should have been permitted to introduce testimony in support of a claim made out against the deceased. But in that case the claim had been presented to the County Court for allowance after notice to the administrator that the claim would be presented for allowance "against the estate." The creditor's purpose could hardly have been misunderstood.

The third sentence of R.L.H. 1955, § 317-23, provides that a claim "otherwise proper" shall be allowed "notwithstanding that a claim may fail to designate or may improperly designate the obligor or obligors on the claim." But other portions of this sentence make it plain that this is a provision for allowance of a claim against whatsoever

property, separate or community, shall be liable therefor, without regard to the determination made in the claim in respect of that matter. Indeed, this third sentence, and the provision that the notice shall be directed as well to the creditors of the community if the deceased was married, both were added to the nonclaim statute by the Community Property Law, S.L.H. 1945, c. 273, repealed in part and amended in part by S.L.H. 1949, c. 242. The 1949 Act made no amendment of the nonclaim statute but, in view of the other provisions of the 1949 Act, this does not alter our conclusion as to the purpose of the third sentence of the nonclaim statute.

Plaintiff relies on *United States Gypsum Co.* v. *Shaffer*, 7 Cal. 2d 454, 60 P. 2d 998 (1936). In that case the executors made no objection to the continuance, without substitution, of an action which was pending when the decedent died. On the basis of a notice of motion in the suit, in response to which one of the executors, who had been attorney for decedent, appeared without disclosing the death of his client, plaintiff was permitted to file an amended claim after expiration of the time for filing creditors' claims. The executors refused payment of this claim. The court held that the amended claim properly was permitted to be filed, but questioned whether any presentation of claim was necessary under the circumstances. That the result reached was affected by the fact that the executor, in the pending action, accepted the procedure followed as sufficient, appears at the end of the opinion where the court said:

"On whichever horn of the dilemma the defendants care to rest, it appears either that a claim was not required to be filed, or that the presentation to the proper person of the notice of motion of May 16, 1933, and appearance pursuant thereto served as a presentation of notice of the plaintiff's claim to the executors

upon which the court could properly predicate an order permitting an amended claim to be filed."

Although this California case resembles the present one in that the creditor was ignorant of the death of the party liable, we are not persuaded that the court would have reached the same result had the notice of motion served in the action been ignored. This is one of several cases in which the executor, though ultimately resisting the claim, originally had acceded in the creditor's mode of pursuing his claim and such circumstance was deemed a factor in upholding the claim. Compare *Hammett* v. *Starkweather,* 47 Conn. 439 and *Roth* v. *Ravich,* 111 Conn. 649, 151 Atl. 179 with *Pike* v. *Thorp,* 44 Conn. 450 and *Powell* v. *Moore's Est.,* 93 Vt. 476. On the other hand in *Pfeiffer* v. *Suss, supra* at 254, it was held that: "It does not matter what the administrator's understanding was." In view of the factual situation here none of these cases is in point.

Plaintiff relies upon cases which hold that, in the particular circumstances, the executor should have called for further information or the court should have permitted the creditor to amend the claim. Plaintiff argues that the filing of the verified claim on March 11, 1958 was by way of amendment.

The first line of cases, exemplified by *Standiford* v. *Cantrell,* 87 Cal. App. 736, 262 Pac. 800, holds it incumbent upon the executor to call for any needed clarification when enough has been done to constitute a claim. The other line of cases, exemplified by *Davis* v. *Superior Court,* 35 Cal. App. 473, 170 Pac. 437, holds applicable a statute permitting amendment of any "proceeding"; plaintiff contends that R.L.H. 1955, § 230-53 is such a statute and is applicable.

Whether under our law presentation of a creditor's claim is a "proceeding," as held in the cases relied upon,

need not be decided. Aside from the question of similarity of statutes—there is no provision in our law for allowance of claims by the probate judge before payment—no legal "proceeding" can be deemed to have been commenced at a time when, as here, the creditor was still endeavoring to collect the debt without such "proceeding." The argument founded upon the duty of the executor to seek clarification likewise fails at the outset, and we do not consider the applicability under our statute of the cases that have been cited on that point. Plaintiff did not even endeavor to file a claim within the required time. Plaintiff may not have known of Dr. Yamanoha's death, but under our statute the only guarantee of such knowledge is perusal of the legal notices in all newspapers of general circulation in any county where the estate of a debtor might conceivably be probated.

Plaintiff's argument really is that plaintiff was entrapped and deceived by the action of the widow in receiving and discarding the statements of account addressed to Dr. Yamanoha without informing plaintiff of his death. However, even if we should so view the circumstances, that would not save the claim. In this jurisdiction there is no statutory provision for relief against the nonclaim statute such as exists in some states. Our statute is decisive of this action. See *Parchen* v. *Hauschild,* 159 Wash. 49, 292 Pac. 116; *In re Landers' Estate,* 34 N.M. 431, 283 Pac. 49; *Certain-Teed Products Corp.* v. *Luke,* 74 F. 2d 384 (9th Cir.), *aff'g* decree of U.S.D.C. Ariz.; *Annot.,* 11 A.L.R. 246, 66 A.L.R. 1415. While the annotations recognize that cases can be found applying a more liberal rule even in the absence of statutory provision therefor (see e.g., *Adams* v. *Hackensack Trust Co.,* 156 Fla. 20, 22 So. 2d 392, but see *In re Williamson's Estate,* 95 So. 2d 244 (Fla.)), this minority rule is not one that we are at liberty to adopt under our

statute, which provides: "It shall not be lawful to allow any claim that is barred * * *." (R.L.H. 1955, § 317-24). Since the executor cannot waive the bar of the statute (*Estate of Thz Fo Farm,* 37 Haw. 447, 454 and cases there cited) he likewise cannot be estopped to assert the bar.

We have all the material facts as to what occurred during the four months' period and those facts lead to but one conclusion—that the claim was not "presented" during that period. Accordingly, the summary judgment for the defendants is affirmed.

*Eichi Oki* (*Spark M. Matsunaga* with him on the briefs) for appellant.

*Martin Pence* (*Pence and Ushijima* on the briefs) for appellees.

### DISSENTING OPINION OF MIZUHA, J.

When the coexecutrix Margaret E. Yamanoha opened the envelopes and read the statements from the Kuakini Hospital and Home in November and December, 1957, and January, 1958, she was presented a legally sufficient claim by the hospital against the estate of her deceased husband. If more particulars were desired, the coexecutrix could demand same at any time after the receipt of the first statement. It is incumbent upon the coexecutrix to call for any needed clarification when enough has been done to constitute a claim. *Standiford* v. *Cantrell,* 87 Cal. App. 736, 262 Pac. 800.

In *Lawelawe* v. *Kahalepuna,* 26 Haw. 615, this court, among other things, laid down the following rule relative to the duties and responsibilities of administrators and executors. "When presented the administrator or executor, as trustee for all creditors and beneficiaries ultimately entitled, is bound to investigate the claim and if found to be just, make provision for its payment. These requirements are simple and due to the liberality of interpretation accorded to statutes of this character in respect to the

remedy provided no formality is required. The sufficiency of a claim is not measured by its ability to withstand a general or special demurrer. A cause of action, as that term is understood in pleading, need not be stated. The rules of pleading do not apply."

21 Am. Jur., *Executors and Administrators,* § 9, makes the following significant statement:

"* * * *The executor or administrator is more the representative of the creditors of the decedent than of the heirs; creditors have the first claim against the estate and it is the paramount duty of the executor or administrator to protect their interests.* In a broad and fundamental sense the representatives of a decedent hold his estate as a trust fund for the payment of his debts. Consequently, in many respects an executor or administrator is a full representative of creditors of the estate committed to his care." (Emphasis added).

*Bishop & Co.* v. *Williams,* 9 Haw. 299, cited by the majority, was a claim on a promissory note as follows:

" '$3,000. " 'Honolulu, November 19, 1891

" 'Twelve months after date we promise to pay the order of C. E. Williams and J. H. Wood three thousand dollars in U. S. gold coin at the bank of Bishop & Co. with interest at 10 per cent per annum. Value received.

" 'H. H. Williams & Co.' "

"Endorsed on back—'C. E. Williams, J. H. Wood.' " This note was the property of the Bishop & Co. by endorsement and delivery. Before maturity J. H. Wood, one of the endorsers, died and the defendants, Waterhouse and Hartwell, qualified as executors under the provisions of Mr. Wood's will. The note fell due November 19, 1892, and on the last day of grace, November 22, Mr. Paty, a notary public, presented it, as stated in his notice of protest, "at the Bank of Bishop & Co., where it was made

payable and payment demanded which was refused, the said note having been dishonored, the same was this day protested by me for the non-payment thereof, and the holders look to you for the payment thereof with all costs, charges, interests, expenses and damages thereby already accrued or that may hereafter accrue thereon by reason of the non-payment of said note." This notice was addressed to the "executors of the Estate of John H. Wood." The court instructed the jury "That the jury may consider the demand and notice by the notary public as evidence of a claim made by Bishop & Co. upon the estate of J. H. Wood" and "that it was a question of fact for them to find whether the notice was sufficient." The jury found for the plaintiff, Bishop & Co.

It is significant that in that particular case, the plaintiff, Bishop & Co., did not present the claim. It was merely a notice of protest by the notary, Mr. Paty, and all said notice of protest stated was that the holders of the note look to the executors for payment, without any definite statement as to the amount, without naming the holders of the note, and without attaching a copy of the note to the notice of protest. Nevertheless, upon review this court, giving the statute of nonclaim a liberal interpretation and observing that although the plaintiff itself did not present the claim, the notice of protest as presented by the notary was a legally sufficient presentation of a claim on the part of the plaintiff, held: "After much research we have come to the conclusion that the notice of dishonor and demand for payment made by the notary upon the executors of the will of J. H. Wood, is a sufficient presentation of the claim under our statute of non-claim."

It is my view that the fact that the statement of charges was made out in the name of the deceased and not to the executors or either of them does not affect the validity of the plaintiff's claim or of its presentation. Any attempt

to distinguish *Coots* v. *Morgan's Administrator,* 24 Mo. 522, is but splitting hairs. In no uncertain terms, the court there stated: "If the evidence offered in support of the plaintiff's demand was rejected because his account was made out against 'Albert G. Morgan' and not against his estate, or the defendant, Martin Snider, the administrator of A. G. Morgan, deceased, we are of the opinion that it was error. When an account is contracted with the deceased himself, it is usual to make it out against him by name, and this seems to be the correct way. Of course it must appear, when suit is brought on the account, that it is brought against his executor or administrator. * * *" p. 523-4.

R.L.H. 1955, § 317-23, provides that "Any claim otherwise proper shall be allowed, as a claim against the deceased or the community of which the deceased was a member or both, in accordance with law, notwithstanding that the claim may fail to designate or may improperly designate the obligor or obligors on the claim. * * *" I think that provision may well be considered as an answer to the contention that the plaintiff's claim is insufficient because it names the decedent. As it reads, the application of the provision cannot be restricted only to claims involving community interests. If the legislature had intended to eliminate this provision, it would have done so when it eliminated the community property law.

It is argued that the claim was sent to an old address, not the place designated in the notice to creditors for the presentation of claims. It should be pointed out that the statute provides for the presentation of claims "* * * either at his residence or at his place of business or at such other place as he may designate, * * *" R.L.H. 1955, § 317-23. It does not provide for the dishonoring of claims that are not sent to the place that is designated.

Reference is made to the statement of hospital charges

as an ordinary statement of account. But it definitely shows that the debt was incurred as an in patient at Kuakini Hospital and Home prior to November 9, 1957. There is no rule that a claim must be perfect in all particulars in order to be a valid claim. In *Syler* v. *Katzer,* 12 Cal. 2d 348, 350, 84 P. 2d 137, the court states:

> "Without discussing these in detail, it may be said that there is no necessity that a creditor's claim be drafted with precision and completeness of a pleading. The only requirement is that it state such facts as will apprise the executor or administrator of the amount of the demand. See Standiford v. Cantrell, 87 Cal. App. 736, 262 P. 800; United States Gypsum Co. v. Shaffer, 7 Cal. 2d 454, 60 P. 2d 998. The claim in the instant case clearly called to the attention of the executor the fact of the services, the period during which they were rendered (up to the time of death), and the amount demanded. If any uncertainty remained, it was incumbent upon the executor to call for clarification. * * *"

In the instant case, the widow of the deceased and coexecutrix of the estate admits she did receive statements from the plaintiff within the four-month period but they were "thrown in the rubbish when received." She was appointed coexecutrix with the First Trust Company of Hilo, Ltd., on September 24, 1957, and caused notice of publication to be published on September 28, 1957. The four-month period expired on January 27, 1958.

Though the statements in November and December, 1957, and in January, 1958, became "rubbish" by her own admission, she further, in her answer to the interrogatories put to her, referred to two statements which were received in February and March, 1958, as follows:

"Statement In Patient Date November 9, 1957
 _____

KUAKINI HOSPITAL
347 N. Kuakini Street
 Honolulu, T. H.
 Telephone 62236
 7-19-57 $ 89.95
 2-1-57 2,292.74
 _____

Dr. Richard A. Yamanoha Balance $2,382.69
 Mrs. Margaret E. Yamanoha
 57 Hina Street
 Hilo, Hawaii

"Statement In Patient Date November 30 1957
 _____

KUAKINI HOSPITAL
 347 N. Kuakini Street
 Honolulu, T. H.
 Telephone 62236

 $2,292.74 2/1
 88.95 7/19
 _____

Dr. Richard Yamanoha Balance $2,381.69
 Mrs. Margaret Yamanoha
 57 Hina Street
 Hilo, Hawaii"

These two statements were turned over by the coexecutrix
and are now in the custody of her attorneys.

39 C.F.R. § 44.2(d) (Rev., 1955) reads as follows:

"*Mail addressed to deceased persons.* Mail ad-
dressed to deceased persons may be delivered to the
executor or administrator. When there will be no court
action on the deceased's estate, the mail may be de-
livered as agreed to by all the heirs."

When Mrs. Margaret E. Yamanoha opened the envelopes from Kuakini Hospital and Home addressed to Dr. Richard A. Yamanoha in November and December, 1957, and January, 1958, she opened same in her official capacity as coexecutrix of the estate of Dr. Richard A. Yamanoha, deceased. If she were acting in any other capacity, it was in violation of United States postal regulations. Once the envelopes were opened and the statements examined, the claim was presented. It then became a matter requiring her official attention in her fiduciary capacity. As long as the envelopes were unopened by Mrs. Yamanoha, they had no legal significance. She could have returned same to the sender, unopened. But as soon as she chose to open same under the authority granted to executors and administrators by United States postal regulations, there was a legal and sufficient presentation of a claim. See *Valente* v. *Sica,* 1 Cal. App. 2d 478, 36 P. 2d 1086, *Breckenridge* v. *Weber Dry Goods Co.,* 167 Ark. 429, 268 S.W. 593.

The discussion by the majority with reference to *United States Gypsum Co.* v. *Shaffer,* 7 Cal. 2d 454, 60 P. 2d 998 (1936) is difficult to follow for the court did say "that the presentation to the proper person of the notice of motion of May 16, 1933, and appearance pursuant thereto served as a presentation of notice of the plaintiff's claim to the executors upon which the court could properly predicate an order permitting an amended claim to be filed."

The facts in the *Shaffer* case, *supra,* reveal that the attorney for the decedent appeared as the attorney of record in the civil matter in response to the notice of motion. The attorney did not appear in his official capacity as coexecutor of the estate of the decedent. From the conduct of the coexecutor in response to the notice of motion in the civil matter, the court implied an intention to look to the estate for payment. Just as the California

court found that there was a sufficient presentation of a claim by way of notice of motion in an entirely different civil matter and subsequent conduct of the coexecutor, a trial jury or court after a full review of all the facts and circumstances could have found a sufficient presentation of a legally valid claim by the subsequent conduct of Mrs. Margaret E. Yamanoha with reference to the envelopes she opened and disposition of the contents therein.

I am unable to follow the majority opinion that the argument with reference to the duty of the executor to seek clarification fails at the outset because the plaintiff did not even endeavor to file a claim within the required time. I conclude differently. The statements presented through the U. S. Mail in November and December, 1957, and January, 1958, were legally sufficient claims, and in accord with the principles laid down in the *Bishop* v. *Williams* and *Lawelawe* v. *Kahalepuna* cases, *supra.* There is no entrapment in this matter. This is a case purely and simply of fraud and deceit. Here we find a widow, who is coexecutrix of her deceased husband's estate and sole beneficiary under the will, opening envelopes addressed to her husband, delivered by the United States Postal Service and containing statements for hospital charges from Kuakini Hospital and Home where her husband was a patient, a fact of which she was no doubt aware, and as the widow throwing the statements away after ascertaining and perusing same in complete disregard of her official capacity as coexecutrix. But when she received similar statements in February and March, after the four-month period had expired, she advisedly preserved and turned the same over to her attorneys.

The only conclusion that I can arrive at from the facts without a full trial is that the coexecutrix chose to ignore the statements for hospital charges, refused to consult

with the coexecutor, The First Trust Co. of Hilo, Ltd., as to the sufficiency or validity of the statements as a claim against the estate, and refused to send the envelopes back to the hospital, to prevent a formal claim from being filed before the expiration of the four-month period. Through such contrivance, she placed the estate in a position to be able to deny liability by resting upon the nonclaim statute. The construction now given to the statute by this court in the light of the peculiar facts involved in this case may open the door to the evasion of estate debts on the basis of some hypertechnical defects in the form or manner of presentation of claims.

*Scholtz* v. *Hazard,* 68 Colo. 343, 349, 191 Pac. 123, 125, clearly states the duties of officers of the probate court:

"An administrator is a trustee of whom the utmost good faith is required. James et al. v. Kelly et al., 107 Ga. 446, 33 S.E. 425, 73 Am. St. Rep. 135. He is particularly the representative of the creditors, holding the estate as a trust fund for the payment of debts. 11 R.C.L. p. 25. The law esteem [sic] it a fraud in such a trustee to take, for his own benefit, a position in which his interest will conflict with his duty. Sheldon v. Estate of Rice, 30 Mich. 296, 301, 18 Am. Rep. 136."

*Estate of S. Kaiu,* 17 Haw. 514, can be easily distinguished. In that case nothing in writing was presented to the administrator. In all cases where the courts have held as a matter of law, that the requirements of nonclaim statutes have been met are instances where some sort of writing has been presented to the court or the executor or administrator.

*Dime Savings Bank* v. *McAlenney,* 76 Conn. 141, 55 Atl. 1019, cited by the majority, refers to a case where "there is no finding of any act done or word spoken by the plaintiff * * * which was either actuated by a purpose

to put this note in a position to claim payment out of the estate, or which evidenced, or was intended to evidence, any such purpose."

In the instant case, the record disclosed the mailing of the statements and receipt of same by the coexecutrix, the opening of the envelopes and discarding of same as "rubbish," acts which from a full trial, one could reasonably conclude that there was a sufficient presentation of a claim, and that these statements were intended to serve as a claim against the estate for payment.

In *Northwestern Auto Parts Co.* v. *Chicago B. & Q. R. Co.*, 240 F. 2d 743, 746 (8 Cir. 1957), the conditions for granting or not granting summary judgment was stated as follows:

"* * * under Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A., a summary judgment upon motion therefor by a defendant should never be entered except where the defendant is entitled to its allowance beyond all doubt; only where the conceded facts show defendant's right with such clarity as to leave no room for controversy; with all reasonable doubts touching the existence of a genuine issue as to a material fact resolved against the movant; giving the benefit of all reasonable inferences that may reasonably be drawn from the evidence to the party moved against. 'That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.' Sprague v. Vogt, 8 Cir., 150 F. 2d 795, 801; Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F. 2d 213; Union Transfer Co. v. Riss & Co., 8 Cir., 218 F. 2d 553; Caylor v. Virden, 8 Cir., 217 F. 2d 739."

I am of the opinion that the lower court should not have granted summary judgment for there was a genuine issue as to the presentation of a legally sufficient claim within the four-month period.