[Civ. No. 364. Fourth Appellate District.—April 21, 1932.]

ESTHER MOSEKIAN, a Minor, etc., et al., Appellants, v. PHILIP GINSBERG, Respondent.

K. Kuyumjian, Barbour & Kellas and Barbour, Kellas & Backlund for Appellants.

Christian Hoeppner and Wakefield & Hansen for Respondent.

THOMSON, J., *pro tem.*—This is an action brought by the heirs of Mosek Mosekian, deceased, to recover damages for his death alleged to have been caused by the negligence of defendant and respondent. The jury returned a verdict in the words and figures as follows: "We, the Jury in the above-entitled action, find for the plaintiffs and against the

defendants and assess plaintiffs' damages in the sum of $0 (nothing)." The plaintiffs appeal from the judgment entered thereon and from an order denying their motion for a new trial. The action arises out of a collision between two motor vehicles which occurred on September 23, 1929, at the intersection of Fruit and Jensen Avenues, public highways in Fresno County, resulting in the death of said Mosek Mosekian.

The appellants base their appeal upon the following grounds: (1) "that the verdict is contrary to law", and (2) "that there was an insufficiency of evidence to justify the verdict in regard to damages, and that there was a clear abuse of discretion on the part of the trial judge in denying plaintiff's motion for a new trial by reason thereof".

The verdict of the jury is a most unusual one and no authorities have been cited, nor do we know of any, which have passed upon a verdict couched in the words and figures of the verdict returned in the case at bar. It is quite apparent, however, that the jury intended to return the verdict in the form in which it appears in the record of the case, however anomalous that may be, as immediately after the verdict was read the jury was polled and each one answered that the verdict as rendered was his or her verdict. The uncontradicted testimony of plaintiffs' witnesses also shows that, if plaintiffs were entitled to recover at all, they were entitled to recover a substantial amount of damages.

In support of their first point appellants contend that, after plaintiffs established damages by uncontradicted evidence, a verdict that found for the plaintiffs and then denied them any relief is "contrary to law", and therefore appellants are entitled to a new trial. No authorities are recited by appellants or respondent in connection with this contention. ■ A verdict or other decision "against law" may be vacated and a new trial granted on that ground. (Code Civ. Proc., sec. 657, subd. 6; 20 Cal. Jur., p. 122.) Section 656 of the Code of Civil Procedure defines a new trial as follows: "A new trial is a reexamination of an issue of fact in the same court after a trial and decision by a jury, court or referee." As stated in 20 Cal. Jur., page 122: "It has been judicially observed that the meaning of the code phrase 'against law' is not altogether plain. When considered in connection with preceding code provisions, however, it clearly

relates to matters which may furnish a reason for the re-examination of an issue of fact." (*Estate of Keating*, 162 Cal. 406, 410 [122 Pac. 1079]; *Kaiser* v. *Dalto*, 140 Cal. 167, 169 [73 Pac. 828].)

With regard to appellants' second point on appeal, section 657, subdivision 6, of the Code of Civil Procedure, also provides that "insufficiency of the evidence to justify the verdict or other decision" is a ground for a new trial.

The term "insufficiency of the evidence" means either an absence of evidence or that the evidence admitted at the trial is lacking in probative force to establish the proposition of fact to which it is addressed. (20 Cal. Jur., p. 106; *Estate of Bainbridge*, 169 Cal. 166, 170 [146 Pac. 427].)

When the question of the insufficiency of the evidence to justify the verdict is presented on a motion for a new trial, it becomes the duty of the trial judge to inquire into the question of sufficiency and to grant a new trial if in his judgment the evidence is insufficient to justify the verdict, or to deny the motion for a new trial if in his opinion the evidence is sufficient to sustain the verdict. (20 Cal. Jur., pp. 106, 107.)

Both of appellants' reasons for seeking a new trial on appeal, therefore, relate to matters which may or may not furnish a reason for the re-examination of issues of fact. There is a clear distinction between the duties and powers of a trial court in passing upon a motion for a new trial upon the grounds heretofore mentioned and those of an appellate court in reviewing the matter on appeal from the judgment. The appellate court is not concerned with questions of preponderance of the testimony or weight of the evidence; the only matter for its determination is whether or not there is evidence which, if given its fullest effect, is legally sufficient to support the decision. (20 Cal. Jur., p. 110; *Guderitz* v. *Boadway Bros.*, 39 Cal. App. 48, 50 [177 Pac. 859].) On the other hand, the trial court may weigh and consider the evidence on behalf of both parties and determine for itself the just conclusion to be drawn from it. The question of the insufficiency of the evidence to justify the verdict is addressed to the sound legal discretion of the trial court.

The question of appellants' right to a new trial was submitted and passed upon by the trial court on appel-

lants' motion for a new trial and the trial court's order denying said motion is properly reviewable on this appeal from the judgment (Code Civ. Proc., sec. 956; *Hughes* v. *De Mund*, 195 Cal. 242, 247 [233 Pac. 94]; *Lambert* v. *Kamp*, 101 Cal. App. 388, 390 [281 Pac. 690]), although the 1915 amendments took away the right of appeal from an order denying a motion for a new trial. (2 Cal. Jur., pp. 173–175; *Hughes* v. *De Mund, supra.*) ▇ The courts of last resort of this state have repeatedly held that insufficiency of the evidence to justify a verdict is a ground for a new trial which is peculiarly within the discretion of the trial court and its order either granting or denying a new trial will not be disturbed on appeal unless it appears that there was a manifest abuse of discretion. (2 Cal. Jur., p. 908; 20 Cal. Jur., p. 112; *Estate of Wall*, 183 Cal. 431, 432 [191 Pac. 687]; *Hiraide* v. *Cochran*, 109 Cal. App. 377, 380 [293 Pac. 165]; *Lambert* v. *Kamp, supra; Donnatin* v. *Union Hardware & Metal Co.*, 38 Cal. App. 8, 12 [175 Pac. 26, 27, 177 Pac. 845].)

▇ The real issue before this court, therefore, is not the direct question of whether or not the verdict is contrary to law, or whether or not there was an insufficiency of evidence to justify the verdict in regard to damages, but rather the question, Did the trial court abuse its discretion in denying plaintiffs' motion for a new trial? (*Lambert* v. *Kamp, supra.*)

With this question in mind, let us examine the record. There is very little conflict in the evidence. It shows that the decedent, accompanied by his father, John Mosekian, was driving a Dodge roadster in a southerly direction on Fruit Avenue, and respondent was driving a Ford truck loaded with livestock in a westerly direction on Jensen Avenue. The decedent died without making any statement. His father, who was riding with him, testified in substance that the machine which struck their machine was traveling in a westerly direction; that he does not know how fast the roadster was traveling, except that they had in the car some fruit and vegetables and were careful not to spoil them. He testified further: "I cannot give the rate of speed, and I didn't have the slightest idea of the rate of speed we were going, but about 20 miles an hour. That is my estimation." He testified on cross-examination that he did not see the

truck that collided with them until after the collision; that he was looking straight ahead; that he didn't know how the accident happened; that he didn't know how fast the truck was traveling at the time it entered the intersection; and that he did not see the cars come together. A deputy sheriff testified that he saw "gouges and grease and marks of violence, and dug-in spots" west of the approximate center of the intersection. He also testified that the right rear fender of the roadster was crushed toward the back and in against the tire and there was a hole in the fender; and the force of the blow on the truck was from the side and the "frame member" was bent toward the center. He explained his theory of the collision from an examination of the vehicles and physical objects at the scene of the collision as follows: "I mean it more as if the truck had started to turn and the frame member, catching in the rear fender of the Dodge, had thrown the Dodge to the left, and caused it to turn over sideways, and the cramping of the truck with the momentum of the load shifting in it, bringing it over almost in an endwise position from the point of impact to where it lay." A girl, nine years old, testified, but she seemed confused and the only positive answer she gave was to the effect that "the truck hit the roadster". The only other evidence adduced at the trial touching upon the question of responsibility for the collision came from defendant and respondent, who testified in substance that he was driving the truck involved in the collision; that he was driving toward the setting sun and had driven about 75 miles that day; that when he first saw the roadster he (respondent) was about 300 feet east of the intersection and was traveling about 20 miles per hour; that the roadster was then "in front of Reis' slaughter house" (which another witness testified was 1,056 feet north of the center of the intersection) and traveling about 25 to 30 miles per hour; that, as he approached and entered the intersection, he was traveling 15 miles per hour; that he did not see the roadster again until he reached the intersection, at which time the roadster was about 60 or 70 feet north of the center of the intersection, and the roadster was then traveling 35 to 40 miles per hour; he entered the intersection first and continued to cross the intersection as he "thought he had plenty of time to get on through the intersection before the other car got there"; but he commenced to

put on his brakes when he saw the roadster entering the intersection, and swerved his car to the south when he saw that the roadster "was practically on top of" him and he realized that a collision was unavoidable, at which time the roadster was traveling at a speed of 45 or 50 miles per hour; that the cars "sideswiped" and turned over. There was some conflict between the answers given by respondent in a statement taken by the sheriff a few hours after the collision and his testimony at the trial.

From an examination of the evidence we cannot say that the trial court abused its discretion in denying plaintiffs' motion for a new trial. Appellants' right to recover any damages from respondent depended primarily on their ability to prove by a preponderance of the evidence that respondent was guilty of some negligent act or omission proximately causing or contributing to the injury complained of. The amount of resulting damage was a secondary matter and, of course, did not need to be considered unless such negligence was proved. Therefore, in determining a motion for a new trial based upon the insufficiency of the evidence to justify the verdict in regard to damages, the trial court should first determine from an examination of the evidence whether or not the complaining party was entitled to recover anything at all. (*Lambert* v. *Kamp, supra.*) If, in the opinion of the trial court in the case at bar, the evidence considered as a whole was of the character to clearly establish the fact that defendant (respondent) was not guilty of negligence and therefore not liable for any damage, then it constituted no abuse of discretion to deny the motion and thereby deny appellants a second attempt to recover something to which the trial court believed them not entitled. As was said in *Donnatin* v. *Union Hardware & Metal Co., supra:* "Every intendment must be indulged in support of the ruling made by the trial court. If, in its opinion, the evidence, considered as a whole, was of a character to clearly establish the fact that defendant was not guilty of negligence, and hence not liable for any damage . . . then it constituted no abuse of discretion for the court to deny plaintiffs' motion for a new trial, made upon the ground of inadequacy of the amount awarded." In our opinion the evidence is such that the trial court was warranted in arriving at the conclusion that defendant was not guilty of negli-

gence which proximately caused or contributed to the injury and that the motion for a new trial was properly denied.

The order of the trial court denying appellants' motion for a new trial, not being an appealable order, the appeal therefrom is dismissed.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 19, 1932, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 20, 1932.