[Civ. No. 13295.   First Dist., Div. Two.   May 16, 1947.]

RAYMOND HUGHES, Respondent, v. HEARST PUBLICATIONS, INC. (a Corporation) et al., Appellants.

George M. Naus, Donald Seibert and Harold B. Lerner for Appellants.

J. Horton Beeman and Harold A. Harwood for Respondent.

DOOLING, J.—Plaintiff was awarded $22,500 by a jury for personal injuries. On motion for new trial he was required to remit all in excess of $15,000 as a condition of the denial of the motion. Defendants appeal from the judgment, their sole attack being directed against the action of the trial judge in making his conditional order on motion for new trial and the claim that the judgment as reduced is still excessive.

The power of the trial court, where the judge after reweighing the evidence on motion for new trial determines that the amount of the verdict is too high, to make an order denying a new trial upon the plaintiff's remission of the portion of the award which the trial judge determines to be excessive, is so thoroughly settled in our law by an unbroken line of decisions commencing with the case of *George* v. *Law,* 1 Cal. 363, that we consider this court foreclosed from reconsidering that question. Appellants argue that "in the case of the tainted verdict at bar, only the plaintiff has consented to the present amount of $15,000.00. The defendant has not consented to it. The right of defendant to a verdict of an impartial jury has been invaded." The Supreme Court of the United States has consistently ruled that such an order does no violence to the defendant's constitutional right to a jury trial (*Northern Pacific R. R. Co.* v. *Herbert,* 116 U.S. 642, 647 [6 S.Ct. 590, 29 L.Ed. 755] ; *Arkansas Valley L. & Cattle Co.* v. *Mann,* 130 U.S. 69, 72-76 [9 S.Ct. 458, 32 L.Ed. 854] ; *Gila Valley etc. Ry. Co.* v. *Hall,* 232 U.S. 94, 103-105 [34 S.Ct. 229, 58 L.Ed. 521] ; and see the discussion in the majority and dissenting opinions in *Dimick* v. *Schiedt,* 293 U.S. 474, 482-485, 493-494 [55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150]), as have a large majority of the state courts which have considered the question (see cases collected in the notes in 53 A.L.R. 783 et seq., and 95 A.L.R. 1166 et seq.), including our own (*Draper* v. *Hellman Com. T. & S. Bank,* 203 Cal. 26, 41 [263 P. 240] ; 20 Cal.Jur. 207, collecting many cases in n. 7).

In requiring the plaintiff to remit the portion of the judgment in excess of $15,000 as a condition of his denying the motion for new trial the trial judge has not, as appellants assert, "impliedly found the taint from the passion and

prejudice.'' ■ The granting of a motion for new trial on the ground that the damages awarded are excessive need not depend on a finding that the award was made by the jury under the influence of passion and prejudice since "it is within the sound discretion of the trial court in ruling upon a motion for a new trial on the ground of excessive damages, to grant the same when there is a substantial conflict in the evidence regarding the extent of the damage." (*Koyer* v. *McComber,* 12 Cal.2d 175, 181 [82 P.2d 941]; *Ballard* v. *Pacific Greyhound Lines,* 28 Cal.2d 357, 362 [170 P.2d 465].) Nor, where the plaintiff is put to his election to remit a portion of the award or suffer a new trial, is it "to be assumed from the making of such conditional order that the trial court concluded that the verdict was the product of passion or prejudice." (*Standiford* v. *Cantrell,* 87 Cal.App. 736, 743 [262 P. 800]; *Swett* v. *Gray,* 141 Cal. 63 [74 P. 439]; *Turner* v. *Whittel,* 2 Cal.App.2d 585, 589 [38 P.2d 835]; *Muench* v. *Gerske,* 139 Cal.App. 438, 444-445 [34 P.2d 198]; *Hepner* v. *Libby, McNeill & Libby,* 114 Cal.App. 747, 754 [300 P. 830]; *Dreyer* v. *Cyriacks,* 112 Cal.App. 279, 283-284 [297 P. 35].) ■ On the contrary the rule adopted by our courts is that where the trial court has required a remission as a condition to denying a new trial "a verdict is reviewed on appeal as if it had been returned in the first instance by the jury in the reduced amount." (*Sherwood* v. *Jackson,* 126 Cal.App. 441, 444 [14 P.2d 861]; *Howard* v. *Adams,* 16 Cal.2d 253, 260 [105 P.2d 971, 130 A.L.R. 1003]; *Smith* v. *Brown,* 102 Cal.App. 477, 487 [283 P. 132].) In view of these settled rules the different view taken by the Supreme Court of Wisconsin as expressed in *Heimlich* v. *Tabor,* 123 Wis. 565 [102 N.W. 10, 68 L.R.A. 669] (cited in appellants' closing brief) can be of no controlling force in California.

We must approach the question of excessive damages, therefore, under the settled rule that "a verdict will not be disturbed by an appellate court unless it is so grossly disproportionate to any reasonable limit of compensation as shown by the evidence that it shocks one's sense of justice and raises a presumption that it is based on passion and prejudice rather than sober judgment." (*Roedder* v. *Lindsley,* 28 Cal.2d 820, 823 [172 P.2d 353].)

■ The plaintiff, aged 57 years, while in a marked pedestrian crosswalk on April 13, 1945, was struck by a truck owned by the corporate defendant and driven by the other

defendant, its servant. There was evidence that the truck was travelling at a rate of speed in excess of fifty miles per hour and that the force of the impact hurled the plaintiff more than sixty feet. Plaintiff had been employed variously as a track laborer, janitor, hospital porter and bus-boy in a department store restaurant. At the time of his injury he had just been reengaged as bus-boy at $36 per week. The force of the impact rendered plaintiff unconscious and he had abrasions about the head and face, although X-rays of the head disclosed no fracture of the skull.

Plaintiff's most serious injuries were a comminuted fracture of the tibia and fibula of the right leg about two inches above the ankle and a fracture of the right humerus with a sliding forward displacement. The broken bones in the leg necessitated the insertion of a metal pin through the heel and the subjection of the leg to traction for approximately two months. On May 3 and May 10, the fractures of the leg bones were remanipulated to secure a better alignment of the broken bones. The plaintiff was confined to a hospital until July 14, and continued thereafter to be an out patient until November. The cast on his leg was finally removed on August 27. At the time of the trial, in April, 1946, plaintiff testified that his ankle was stiff and "I can't walk up and down steps like I used to." From the long immobilization of his leg he has some pain, stiffness and limitation of motion in his knee which will be permanent.

A nonoperative reduction of the fracture of the arm was first attempted but proper conjunction was not obtained and open surgery of the arm was found necessary. A steel plate was inserted over the fracture, to hold the severed bones in position, attached to the bones by steel screws. At the time of trial the bone was well knit and in good alignment. The steel plate will remain in the arm unless the screws become loose which would necessitate a further operation to remove the plate. Plaintiff testified that his arm was not as strong as it was before the accident and "I tried to lift a box the other day, and I couldn't lift it up." He has a permanent disability of the shoulder with some limitation of motion and a permanent lack of ten degrees in flexion and extension of the elbow. A medical witness testified that these permanent disabilities in his arm "would not allow him to do any stevedoring at the present time. But he could return to some light form of work." The plaintiff testified that he had sought light work but had not been able to obtain any.

He had suffered a second fracture of the right arm on November 23, 1945, disconnected with the original accident. However the same medical witness testified "that it frequently happens that such an arm that has become shrunken with lime salts will break, not at the point of fracture, but elsewhere, there usually being more lime salts at the site of a well healed fracture than in the rest of the arm which has lost its lime salts because of disuse."

The plaintiff suffered considerable pain as a result of his extensive injuries and was still suffering some pain at the time of trial. He is not disabled permanently from doing work of the kind that he was doing immediately before his injury and appellants make much of this fact. However, he has some permanent incapacity for heavy work, such as lifting. He is a man who is compelled to earn his living by manual labor of some sort and the jury and judge were entitled to consider his handicaps in a competitive market for unskilled labor by reason of his permanent physical impairment.

Deducting special damages, an amount slightly in excess of $12,000 is attributable to general damages. We are not prepared to say that this is so excessive as to shock our sense of justice or raise a presumption of passion and prejudice. A mechanical comparison with awards of some years ago which were reversed or reduced, considered *in vacuo,* might support the conclusion that the award in this case was too large to stand; but we cannot blind ourselves to the changing value of the dollar, a factor which has frequently been referred to by our courts in recent years in considering awards for permanent injuries. This court has so recently considered this matter in *Foster* v. *Pestana,* 77 Cal.App.2d 885 [177 P.2d 54] that a reference to the cases cited, and our discussion of this question, on pages 997-998 will suffice.

"The question of what may be reasonable compensation in cases of this kind is a matter on which there legitimately may be a wide difference of opinion" (*Roedder* v. *Lindsley, supra,* 28 Cal.2d 820, 823) and we see no reason to interfere with the considered determination of the trial judge that the $15,000 to which he required plaintiff's remission was not excessive.

Judgment affirmed.

Nourse, P. J., and Goodell, J., concurred.