[S. F. No. 18369. In Bank. Feb. 4, 1952.]

JOSEPHINE DORSEY et al., Appellants, v. VINCENT
BARBA et al., Respondents.

Theodore Golden, J. Bruce Fratis and Julius M. Keller for Appellants.

James F. Galliano, C. Paul Paduck, Henry Teichert, Gerald P. Martin, Clark & Heafey, Edwin A. Heafey, Augustin Donovan and Louis B. De Avila for Respondents.

GIBSON, C. J.—This action was brought to recover damages for personal injuries sustained by plaintiffs Dorsey and Anderson in an automobile accident. They sought recovery against Vincent Barba as operator, and Catherine Barba as registered owner, of the car which collided with the one in which they were riding. The jury returned verdicts against Vincent but in favor of Catherine, and judgment was entered accordingly. Thereafter, pursuant to a conditional order made on plaintiffs' motion for a new trial, the court, with Vincent's consent, modified the judgment against him by increasing the amount of damages awarded. Plaintiffs, who did not consent to the increase, have appealed from the modified judgment against Vincent and from the judgment in favor of Catherine.

### LIABILITY OF CATHERINE

The automobile, which was purchased with community funds, was registered in Catherine's name alone, and she testified that Vincent "had it put in my name so that I would feel that half of it belonged to me and the other half belonged to him." Defendants separated, and a property settlement agreement was entered into by which Catherine transferred "all of her right, title, and interest" in the car to Vincent. The agreement was approved by an interlocutory decree of divorce signed about three months prior to the accident. Before the separation Vincent drove the car to and from work and used it whenever he desired, and it was in his possession when the agreement was made. The car was never

driven by Catherine, and she testified that she allowed Vincent to keep it after the separation, that she "presumed he was using it," and that she did not ask him to return it or tell him he could not drive it. Catherine did not endorse the ownership certificate until some months after the accident, and she did not give the Department of Motor Vehicles any notice of the intended transfer as provided by statute. (See Veh. Code, §§ 176, 177, 178, 186.)

Section 402 of the Vehicle Code, as amended in 1943, imputes to the owner of an automobile liability for the negligence of a person operating the vehicle with the owner's express or implied permission. In the absence of compliance with Vehicle Code, sections 178 and 186, a purported transfer of an automobile is ineffective to relieve an owner of the liability imposed under section 402. (See *Weinberg* v. *Whitebone*, 87 Cal.App.2d 319 [196 P.2d 963] ; *Stewart* v. *Norsigian*, 64 Cal.App.2d 540 [149 P.2d 46, 150 P.2d 554] ; *Leplat* v. *Raley Wiles Auto Sales*, 62 Cal.App.2d 628 [145 P.2d 350] ; *Bunch* v. *Kin*, 2 Cal.App.2d 81 [37 P.2d 744] ; see, also, *Votaw* v. *Farmers A. Inter-Ins. Exch.*, 15 Cal.2d 24 [97 P.2d 958, 126 A.L.R. 538].) Catherine does not dispute this rule but contends that it is inapplicable to her because she had only a community interest in the car and never was an owner within the meaning of that section. She relies on section 66 of the Vehicle Code, which defines an owner as "a person having all the incidents of ownership," and argues that since the exclusive management and control of community personal property is given to the husband by section 172 of the Civil Code, she did not have all of the rights of an owner in the car.

It is clear, however, that a person may be liable as an owner under section 402 even though he does not have "all the incidents of ownership." That section provides that *every owner* of a motor vehicle is liable for imputed negligence except conditional vendors, their assignees, and chattel mortgagees, when those persons are out of possession. The express mention of these exceptions indicates that the framers of section 402 did not intend to incorporate the definition of owner found in section 66. If the intent had been to limit liability to those having "all the incidents of ownership," it would not have been necessary to expressly exempt conditional vendors and chattel mortgagees, who, of course, do not possess all the rights of ownership. Catherine, as sole registered

owner of the automobile, obviously is included in the term "every owner," and since she is not within the exceptions she can avoid liability only by showing she did not actually consent or had no power to consent to Vincent's use of the car.

There can be no question that at the time of the accident Vincent was driving the car with Catherine's permission, but she contends that any consent she may have given was ineffective because she lacked power to give her husband permission to use the car since he had the right of management and control under section 172 of the Civil Code. In support of her position Catherine relies upon *Pacific Tel. & Tel. Co.* v. *Wellman,* 98 Cal.App.2d 151 [219 P.2d 506], where the car involved in the accident was registered in the names of both Mr. and Mrs. Wellman. The court held that the car must be presumed to be community property and that for the purposes of section 402 the negligence of Mr. Wellman in operating the car could not be imputed to his wife because she lacked power to consent to his use of it. (*Cf. Cox* v. *Kaufman,* 77 Cal.App.2d 449 [175 P.2d 260], where the husband was the sole registered owner.) There is also language in *Wilcox* v. *Berry,* 32 Cal.2d 189, 191-192 [195 P.2d 414], and *Caccamo* v. *Swanston,* 94 Cal. App.2d 957, 963, 965 [212 P.2d 246], indicating that when a car is registered in the names of both husband and wife, she may show that she had only a community interest and therefore had no power to give her husband consent to operate the car.

The foregoing cases may be distinguished, however, because none of them involved the situation here present where the car was registered in the wife's name alone and she in fact consented to her husband's use and operation of it. Under these circumstances, the wife should not be permitted to claim that she was without power to give such consent.

The requirements for registration were enacted in the interests of public welfare, and one of the purposes for the legislation is to afford identification of vehicles and persons responsible in cases of accident and injury. (See *Henry* v. *General Forming, Ltd.,* 33 Cal.2d 223, 227 [200 P.2d 785].) Where the registration shows the names of both husband and wife, their identity is disclosed as contemplated by the statute, and, if an accident occurs while the husband is driving, there may be some justification for permitting the wife to explain and amplify the record by showing the true status of her ownership. On the other hand, where, as here, the registration

is in the wife's name alone with her knowledge, and she in fact gives her husband implied or express permission to use the car, the statutory purpose would be defeated if she were permitted to contradict the record by showing that, instead of being the sole owner, she had merely a community property interest and no power to give permission.[1]

It appears from the foregoing that the record establishes as a matter of law that Catherine was liable, to the extent provided by section 402, for any injuries to plaintiffs resulting from negligent operation of the car by Vincent. Since the jury determined that plaintiffs' injuries were the proximate result of Vincent's negligence, it could not properly have found for Catherine, and the judgment in her favor must therefore be reversed.

### Propriety of Order Increasing Awards

The verdicts against Vincent apparently made no allowance for damages for pain and disfigurement suffered by plaintiffs since the amounts awarded were insufficient to cover medical expenses and loss of earnings. Plaintiffs' motion for new trial was denied on condition that Vincent consent to a modification of the judgment increasing each award in an amount fixed by the court. The figures arrived at exceeded the special damages proved and apparently included some compensation for pain and disfigurement. Vincent agreed to the increases, but plaintiffs' assent was not required or given. The primary question concerns the propriety of the court's action in assessing damages without plaintiffs' consent.

Plaintiffs contend that the amounts fixed by the court are inadequate and that, since the damages are contested and uncertain, the act of the court in increasing the jury's award without their consent constitutes a denial of their right to a jury trial in violation of article I, section 7, of the California Constitution which provides that the "right of trial by jury shall be secured to all, and remain inviolate." This section guarantees the right of jury trial as it existed at common law when the Constitution was adopted in 1849. (*People* v. *Kelly*, 203 Cal. 128, 133 [263 P. 226]; *People* v. *Martin*, 188 Cal. 281, 285-286 [205 P. 121, 21 A.L.R. 1399]; *Southern*

---

[1]For cases establishing the right of an injured party to proceed against an owner other than the registered owner, see *Ferroni* v. *Pacific Finance Corp.*, 21 Cal.2d 773, 778 [135 P.2d 569]; *Logan* v. *Serpa*, 91 Cal.App.2d 818, 822 [206 P.2d 70]; *McCalla* v. *Grosse*, 42 Cal.App.2d 546, 549-550 [109 P.2d 358].

*Pac. Land Co.* v. *Dickerson,* 188 Cal. 113, 117-118 [204 P. 576] ; *Cline* v. *Superior Court,* 184 Cal. 331, 339 [193 P. 929] ; *Martin* v. *Superior Court,* 176 Cal. 289, 292-294 [168 P. 135, L.R.A. 1918B 313] ; see *Estate of Bainbridge,* 169 Cal. 166, 167 [146 P. 427] ; *Ingraham* v. *Weidler,* 139 Cal. 588, 589-590 [73 P. 415].) At that time, apparently, there was no recognized common law practice allowing the court to increase a jury's award in a case involving unliquidated damages. (See *Dimick* v. *Schiedt,* 293 U.S. 474, 476-482 [55 S.Ct. 296, 297-299, 79 L.Ed. 603, 95 A.L.R. 1150] ; Mayne's Treatise on Damages [2d ed., 1856] pp. 303-305, [9th ed. 1919] pp. 571, 580 ; Sedgwick, Treatise on Damages [1847] pp. 19, 21, footnote p. 582, *cf.* [4th ed. 1868] pp. 710-717.)

 The constitutional guarantee does not require adherence to the letter of common law practice, and new procedures better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial. (*People* v. *Hickman,* 204 Cal. 470, 476 [268 P. 909, 270 P. 1117].) An essential element of such a trial, however, is that issues of fact shall be decided by a jury, and the assessment of damages is ordinarily a question of fact. The jury as a fact-finding body occupies so firm and important a place in our system of jurisprudence that any interference with its function in this respect must be examined with the utmost care.

There is a conflict of authority as to the extent of a court's power to increase the amount of an inadequate award over plaintiffs' objection. Some jurisdictions do not permit the exercise of such a power. (*Lemon* v. *Campbell,* 136 Pa. Super. 370 [7 A.2d 643], citing *Bradwell* v. *Pittsburgh & W. E. P. R. Co.* 139 Pa. 404 [20 A. 1046] ; see *Watt* v. *Watt,* L. R. [1905], A.C. 115, 119-121.) Some allow it where damages are liquidated or can be ascertained by a fixed standard. (*Rudnick* v. *Jacobs,* 9 W.W.Harr. (Del.) 169 [197 A. 381, 383, 384, discussing Massachusetts and Michigan decisions; *Kraas* v. *American Bakeries Co.,* 231 Ala. 278 [164 So. 565, 570].) Other jurisdictions apparently allow the court to assess increased damages as a condition to denying a new trial without regard to whether damages are liquidated or unliquidated. (See *Markota* v. *East Ohio Gas Co.,* 154 Ohio 546 [97 N.E. 2d 13, 18-19].)[2] The Wisconsin rule permits a court to in-

---

[2] Numerous cases contain broad statements recognizing the practice but involve procedural and factual situations distinguishable from the one before us. See, for example, *Secreto* v. *Carlander,* 35 Cal.App.2d

crease an award over plaintiffs' objection if defendant consents to pay the largest amount which a jury could assess under the proof. (See *Campbell* v. *Sutliff*, 193 Wis. 370 [214 N.W. 374, 53 A.L.R. 771].)

The leading authority on the subject is *Dimick* v. *Schiedt*, 293 U.S. 474 [55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150] which held that a federal court could not increase a jury's award without the consent of both parties. The decision points out that the practice was not recognized generally at common law, and that an attempt by the court to fix damages over plaintiff's objection constitutes a violation of the Seventh Amendment to the United States Constitution which provides that ''the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any court of the United States, than according to the rules of the common law.'' State courts, of course, are not bound by the Seventh Amendment (*Pearson* v. *Yewdall*, 95 U.S. 294, 296 [24 L.Ed. 436]; *Walker* v. *Sauvinet*, 92 U.S. 90, 92 [23 L.Ed. 678], and it is true that there is some difference in language between that amendment and the parallel provision of the California Constitution.[3] The reasoning of the Dimick case, however, is applicable here since both the state and federal Constitutions adopted the existing rules of common law with regard to trial by jury, and the variation in language does not warrant a different interpretation of the state Constitution.

361, 364 [95 P.2d 476], *Clausing* v. *Kershaw*, 129 Wash. 67 [224 P. 573, 574], and *Gaffney* v. *Illingsworth*, 90 N.J.R. 490 [101 A. 243 at 243] [defendant refuses to assent to increase and appeals from order granting new trial, claiming court without power to make new trial order conditional]; *Esposito* v. *Lazar*, 2 N.J. 257 [66 A.2d 172, 173], [defendant appeals from order granting new trial on issue of damages alone, claiming verdict indicated compromise—see, also, *Elvin* v. *Public Service Coordinated Transp.*, 4 N.J.Super. 491 [67 A.2d 889, 890]; *Blackmore* v. *Brennan*, 43 Cal.App.2d 280, 289 [110 P.2d 723] [defendant, appealing from modified judgment, waived right to jury trial by consenting to increased award]; *Adamson* v. *County of Los Angeles*, 52 Cal.App. 125, 131 [198 P. 52] [collateral attack on modified final judgment in condemnation proceeding in which county had consented to increased award. Damages certain and computable.]

Minnesota and New Hampshire have noted the question of interference with plaintiff's right to jury trial, but have not passed upon it. (*Olson* v. *Christiansen*, 230 Minn. 198 [41 N.W.2d 248-249]; *Hackett* v. *Boston & M. R. R.*, 89 N.H. 514 [6 A.2d 139, 140, 142].)

[3]Article I, section 7, of the California Constitution provides merely that the right of trial by jury ''shall be secured to all and remain inviolate,'' and it does not contain the further language that ''no fact tried by a jury shall be otherwise re-examined . . . than according to the rules of the common law.''

It is generally recognized that a court may not increase an inadequate award in a case involving contested and unliquidated damages without the defendant's consent. (See note 53 A.L.R. 783; 95 A.L.R. 1165; *cf.* discussion of the Wisconsin practice in *Campbell* v. *Sutliff*, 193 Wis. 370 [214 N.W. 374, 53 A.L.R. 771].) It would seem to follow, logically, that the plaintiff's consent is also necessary. The assessment of damages by a court where they are speculative and uncertain constitutes more than a technical invasion of the plaintiff's right to a jury determination of the issue. Despite the fact that he has apparently benefited by the increase, the plaintiff has actually been injured if, under the evidence, he could have obtained a still larger award from a second jury. In the present case, for example, the evidence would sustain recovery for pain and disfigurement well in excess of the amounts assessed by the court.

In support of the practice of denying a new trial over the plaintiffs' objection on condition that defendant consent to pay an increased amount, it has been said that the constitutional guarantee is satisfied when the plaintiff has had one jury trial and that the court's exercise of its power to grant or deny new trials will not be disturbed in the absence of an abuse of discretion. (See dissenting opinion *Dimick* v. *Schiedt*, 293 U.S. at 492-498, 55 S.Ct. at 303-305.)

However, it is not the mere form of a jury trial to which one is entitled under the Constitution, but the fundamental right to have a jury determination of a question of fact. It is, of course, clear that there has been no denial of such right if a verdict is set aside and motion for new trial granted. (*Estate of Bainbridge*, 169 Cal. 166 [146 P. 427]; *Ingraham* v. *Weidler*, 139 Cal. 588 [73 P. 415].)

But it does not follow that, in lieu of ordering a new trial, the court may itself assess damages on conflicting or uncertain evidence and modify the judgment with the assent of only one party. Neither can such procedure be justified as a proper exercise of the court's authority to prescribe terms in granting or denying motions for new trials. A court may not impose conditions which impair the right of either party to a reassessment of damages by the jury where the first verdict was inadequate, and the defendant's waiver of his right to jury trial by consenting to modification of the judgment cannot be treated as binding on the plaintiff.

It is true that a court has power to require *reduction* of a jury's award over the defendant's objection as a

condition to denying his motion for a new trial in cases where damages are uncertain and speculative. (*Draper* v. *Hellman Commercial T. & S. Bank*, 203 Cal. 26, 42-43 [263 P. 240]; *Morris* v. *Standard Oil Co.*, 192 Cal. 343 [219 P. 998, 30 A.L.R. 1103]; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 237, 254 [116 P. 513].) There is considerable doubt whether this power was recognized at common law,[4] but, as stated by this court in 1893, the practice is "too firmly established in this state by a long line of decisions to be now questioned." (*Davis* v. *Southern Pac. Co.*, 98 Cal. 13, 17, 18 [32 P. 646].) There may be no real distinction between the powers to increase and decrease an award of damages, but it does not follow that because the practice of remitting damages over the defendant's objection has been approved through what appears to have been a misconception of common law procedure, we must now allow the court to assess increased damages over the plaintiff's objection, a practice which has even less basis in the common law. Like the United States Supreme Court in the Dimick case, we are reluctant to extend the precedent of the remittitur cases, by analogy or otherwise, to the present situation, since it would result in impairment of the right to jury trial.

Arguments to the effect that courts should be permitted to increase awards without the plaintiff's consent because such procedure is more expeditious and would constitute an improvement over established practice might be persuasive if addressed to the people in support of a constitutional amendment, but they are not appropriate here.

The judgment is reversed as to both defendants.

Shenk, J., Edmonds, J., Carter, J., and Spence, J., concurred.

SCHAUER, J., Concurring and Dissenting.—I agree that the modified judgment should be reversed as to Vincent; I would, however, affirm the judgment as to Catherine. She lacked the power to *forbid* Vincent's use of the car and, hence, as a matter of law she could not in any legally material sense *consent* to his use of it. (See *Krum* v. *Malloy*

---

[4]It was apparently taken for granted in this state, as it was in the early federal courts, that the practice was established at common law. (See *Dimick* v. *Schiedt*, 293 U.S. 474, 482-484 [55 S.Ct. 296, 299-300, 79 L.Ed. 603, 95 A.L.R. 1150]; *Benedict* v. *Cozzens* (1854), 4 Cal. 381; see, however, *Payne* v. *Pacific Mail Steamship Co.* (1850), 1 Cal. 33, 36-37 and *George* v. *Law*, 1 Cal. 363, 364-365.)

(1943), 22 Cal.2d 132, 135 [137 P.2d 18] ; *People* v. *Forbath* (1935), 5 Cal.App.2d Supp. 767, 769 [42 P.2d 108].)

TRAYNOR, J., concurring and dissenting.—For the reasons stated in the majority opinion, I agree that the judgment in favor of Catherine Barba should be reversed. I dissent, however, from the holding that the courts of this state do not have the power of additur.[1]

## I

It is incongruous that plaintiffs should base their appeal upon the ground that they have been denied a constitutional right to jury trial. Although they had a jury trial, they do not want a judgment entered on the jury verdict. They attack that verdict and ask the court to rescue them from it by granting a new trial before another jury. The right to a jury trial, however, does not include the right to a new trial.

Plaintiffs' erroneous reliance upon the constitutional guarantee results from a failure to recognize the dual character of the right to jury trial. Section 7 of article I of the California Constitution operates at the time of trial to require submission of certain issues to the jury. Once a verdict has been returned, however, the effect of the constitutional provision is to prohibit improper interference with the jury's decision. This secondary effect of the constitutional right is well illustrated by the reluctance of the English common law judges to grant new trials in tort cases on the grounds of excessive or inadequate damages. At the time of the American Revolution,[2] the jury's determination of the amount of damages in contract actions and in certain tort actions

---

[1] ''Additur,'' sometimes called ''increscitur,'' is used herein to describe an order by which a plaintiff's motion for a new trial on the ground of inadequate damages is denied on the condition that the defendant consent to a specified increase of the award. ''Remittitur'' is used to describe an order by which a defendant's motion for a new trial on the ground of excessive damages is denied on the condition that the plaintiff consent to a specified reduction of the award.

[2] With the inclusion of jury trial provisions in the early state and federal Constitutions (see 35 C.J. 147, § 12), the concept of jury trial in this country became fixed and has not been affected by subsequent changes in English law. It is this American concept of jury trial, based on the English jury system of Revolutionary times, that was adopted in California in 1849. (See *Koppikus* v. *State Capitol Commrs.*, 16 Cal. 248, 253, 254; *People* v. *Hickman*, 204 Cal. 470, 475 [268 P. 909, 270 P. 1117]; cf. *Fletcher* v. *Los Angeles Tr. & Sav. Bank*, 182 Cal. 177, 184 [187 P. 425].)

involving property was subject to judicial supervision through the granting of new trials; in tort actions involving interests· in personality, however, the courts rarely[3] interfered with the amount of the jury's verdict. (*Wilford* v. *Berkeley,* 1 Burr. 609, 97 Eng.Rep. 472 [K.B. 1758]; *Sharpe* v. *Brice,* 2 Bl.W. 942, 96 Eng.Rep. 557 [C.P. 1774]; *Beardmore* v. *Carrington,* 2 Wils.K.B. 244, 248, 95 Eng.Rep. 790, 792 [C.P. 1764]; see Buller, J., on Nisi Prius [1785 ed.], p. 327; Sedgwick on Damages [9th ed. 1913], pp. 688-689; Mayne on Damages [11th ed. 1946], pp. 632-636; McCormick on Damages, pp. 26-27; Washington, *Damages in Contract at Common Law,* 47 L.Q.Rev. 345, 364.) Moreover, the judges expressly recognized that the reason for their refusal to grant new trials in such cases was the fact that the determination of the amount of damages was within the exclusive province of the jury. Thus, in 1764, in a case involving trespass and false imprisonment, the Court of Common Pleas reviewed the earlier decisions and, in a unanimous opinion, said: "We are now come to the case in 1 Stra. 691, *Chambers* .v. *Robinson,* which seems to be the only case where ever a new trial was granted merely for the excessiveness of damages only: we are not satisfied with the reason given in that case, and think it of no weight, and want to know the facts upon which the Court could pronounce the damages to be excessive. The principle on which it was granted, mentioned in Strange, was to give the defendant a chance of another jury: this is a very bad reason; for if it was not, it would be a reason for a third and fourth trial, and would be digging up the constitution by the roots; and therefore we are free to say this case is not law; and that there is not one single case (that is law) in all the books to be found, where the Court has granted a new trial for excessive damages in actions for torts. . . . We desire to be understood that this Court does not say, or lay down any rule that there never can happen a case of such excessive damages in tort where the Court may not grant a new trial; but in that case the damages must be monstrous and enormous indeed, and such as all mankind must be ready to

---

[3]Tort cases of the 17th and early 18th centuries in which new trials were granted for excessive damages appear to have involved also actual misconduct of the jury. (See *Wood* v. *Gunston,* Style 466, 82 Eng.Rep. 867 [U.B. 1655]; *Roe* v. *Hawkes,* 1 Lev. 97, 83 Eng.Rep. 316 [K.B. 1663]; *Ash* v. *Ash,* Comb. 357, 90 Eng.Rep. 526 [K.B. 1697]; *Beardmore* v. *Carrington,* 2 Wils.K.B. 244, 249, 95 Eng.Rep. 790, 793 [C.P. 1764].)

exclaim against, at first blush.'' (*Beardmore* v. *Carrington*, 2 Wils.K.B. 244, 249, 95 Eng.Rep. 790, 793.)[4]

Unwillingness to interfere with the jury's decision was likewise a controlling consideration in the first California case to discuss the constitutional function of the jury with respect to the assessment of damages. In *Payne* v. *Pacific Mail S. S. Co.*, 1 Cal. 33, a tort action decided in 1850, the evidence on the issue of damages was conflicting, and the jury returned a verdict for $1,000. The trial court ordered a new trial unless the plaintiff consented to a remittitur of $400, but the plaintiff refused and appealed from the order granting a new trial. In unanimously reversing the action of the trial judge, this court said: ''Courts with great reluctance ever interfere with the finding of a jury in an action for unliquidated damages for reason that the damages are excessive, and a court ought never to set aside a verdict for such a cause, unless, beyond doubt, the verdict be unjust and oppressive, obtained through some undue advantage, mistake, or in violation of law, as upon questions so peculiarly pertaining to the powers and investigation of the jury, it ought to be presumed that the verdict of the jury is correct. . . . The right of trial by jury in civil as well as criminal cases, being secured by the Bill of Rights, and believing as we do, that it is the duty of this court to remove every obstacle in the way of a free exercise of its right, and that it should not be interfered with on the part of the courts, except for the reasons above alluded to, and that in the end, however just it may have appeared to the court below to set aside this verdict, great abuse, if not the destruction of this right, would ensue, we are of the opinion that the order of the court of First Instance, granting a new trial, should be reversed.'' (1 Cal. 33, 36-37.)

The following year, the Payne case was expressly approved in *George* v. *Law*, 1 Cal. 363, 365, which was decided under circumstances even more directly analogous to the present

---

[4]After the American Revolution, dicta continued to appear to the effect that new trials for excessive damages would be granted in cases of torts against the person under appropriate circumstances; by the end of the 18th century the Court of King's Bench had acted upon this doctrine. (*Jones* v. *Sparrow*, 5 T.R. 257, 101 Eng.Rep. 144 [K.B. 1793]; cf. *Duberly* v. *Gunning*, 4 T.R. 651, 100 Eng.Rep. 1226 [K.B. 1792].) Until the middle of the 19th century, however, the English courts refused to grant new trials in such cases on the ground of inadequate damages. (See *Phillips* v. *London & S. W. Ry.*, 5 Q.B.D. 78 [1879]; *Manton* v. *Bales*, 1 C.B. 444, 135 Eng.Rep. 613 [1845]; cf. *Armytage* v. *Haley*, 4 Q.B. 917, 918, 114 Eng.Rep. 1143, 1143 [1843].)

appeal. The plaintiff was awarded $1,000 by the jury, but the trial court ordered a new trial unless the plaintiff should consent to a remission of $500. This time the plaintiff consented, and the defendants appealed. In affirming the judgment, the court said: "It can scarcely be just ground of complaint on the part of appellants that the judgment of the court stands for but one-half the amount, for which the verdict of the jury was rendered. The respondent, if he had not acquiesced in the action of the court below by filing his *remittitur,* might, with more reason, have sought the intervention of this court to sustain the finding of the jury. . . ." (1 Cal. 363, 365.)

These early English and California cases show clearly that when the constitutional right to jury trial was established it was regarded as a protection to parties relying upon a verdict. Not until today has this court undertaken to extend that protection to parties who attack a verdict. It is true that new trials because of excessive or inadequate damages are more frequently granted now than a century ago (*cf.* Holmes, The Common Law, pp. 122-129), but it is also true that this modern practice constitutes a limitation upon the former powers of the jury. Whatever may be the basis of a party's right to a new trial on the ground of inadequate damages, it is obvious that such relief is granted in spite of, rather than because of, the constitutional right of trial by jury.

## II

In an attempt to overcome the fact that plaintiffs have already had their jury trial, it is contended that there has been thus far only a formal compliance with the constitutional requirement; it is said that plaintiffs have yet to be accorded the substance of the right to jury trial—"the fundamental right to have a jury determination of a question of fact." Unquestionably, the practical effect of additur is to give plaintiffs a judgment based, as to amount, upon a finding made by the trial judge. Moreover, the mere fact that plaintiffs have benefited from the disagreement between judge and jury is not of itself a sufficient answer to the claim that the judge had no authority to make such a finding.

Under appropriate circumstances, judges constitutionally may, and constantly do, determine fact issues. The broad scope of this fact-finding activity refutes the contention that the framers of the Constitution regarded the jury as the

exclusive fact tribunal. Thus, in a common law action tried before a jury, the trial judge makes innumerable fact decisions in admitting and excluding evidence, in determining the court's jurisdiction, in passing on pleadings, and in interpreting documents. (*Fairbank* v. *Hughson*, 58 Cal. 314, 315; *Vallejo & Northern R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, 575 [147 P. 238]; *United States* v. *Cotter*, 60 F.2d 689, 691; *People* v. *Hillman*, 246 N.Y. 467, 472-474 [159 N.E. 400]; *State* v. *White*, 70 Vt. 225, 228 [39 A. 1085]; *Durr* v. *State*, 175 Miss. 797, 808 [168 So. 65]; see 9 Wigmore on Evidence, [3d ed.], pp. 499-530, §§ 2549-2559; Thayer, Preliminary Treatise on Evidence, pp. 185, 202, 203, 249.) These decisions may even involve the same fact issues that, for other purposes, are placed before the jury and may be of equal importance to the outcome of the case. (See, for example, Peat's Case, 2 Lewin 288, 168 Eng.Rep. 1157, and note.) Moreover, in equity, admiralty, probate, divorce, bankruptcy, and an ever-growing number of administrative cases, there is no constitutional right to a jury at all—fact questions may constitutionally be decided by the judge or administrative body alone.

It is apparent that these many instances of judicial fact-finding cannot be reconciled with what plaintiffs claim is the underlying principle of jury trial. In reality the explanation of the right to jury trial is neither logical nor theoretical—it is historical.[5] The jury system developed in England over a period of centuries, and during that development many fundamental changes took place; at no time was the system wholly consistent within itself. The framers of the Constitution wisely refrained from attempting to rationalize into a single principle the conflicting rules relating to juries. Their object was not to perfect the jury system but to perpetuate it, and the right they established was therefore a limited one—the right to have a jury trial of certain questions of fact under certain circumstances. Expan-

---

[5]It is sometimes said that the constitutional guarantee was intended primarily to limit the power of judges. This view of the jury system as essentially a protection against judicial officials does not conflict with additur. The jury by its verdict has already provided the contemplated protection. So far as the present plaintiffs are concerned, the limits fixed by the jury have not been violated, for the judge has awarded plaintiffs more than did the jury. Any objection that the judge has gone beyond the verdict in the other direction is removed by defendant's consent.

sion and improvement were left to statute and to constitutional amendment.[6]

In deciding the issue of constitutionality, therefore, we must be governed by an historical standard. At the time of the American Revolution, would plaintiffs have had the right to a reassessment of damages by a second jury? They would have had no such right simply because, as has been seen, the first jury's determination of the amount of damages was conclusive. The reexamination of the damages issue following an inadequate verdict in cases of torts against the person is a modern development unknown to the common law. Moreover, there is every reason to believe that the English judges of the late 18th century would have utilized the additur device, had they been willing to give plaintiffs' motion any consideration at all.

It must be borne in mind that plaintiffs are in this court on an appeal from the trial court's ruling on their motion for a new trial on the ground of the insufficiency of the evidence to support the verdict. Two of the well-established principles governing the disposition of such motions are of particular importance.

1. The granting of new trials on the ground of the insufficiency of the evidence is discretionary with the court.[7] Such new trials developed in the 17th century after punishment of jurors and the harsh remedy of attaint had fallen into disuse. (1 Holdsworth, History of English Law, 3d ed. p. 225; Thayer, Preliminary Treatise on Evidence, pp. 169, 172.) Equity had undertaken to relieve against unjust verdicts, and, in seeking to protect their jurisdiction from the encroachment of the chancellor, the common law courts themselves began to set aside verdicts that were inequitable. (*Bright* v. *Eynon*, 1 Burr. 390, 394-395, 97 Eng.Rep. 365,

---

[6] This responsibility has not been ignored. For example: the requirement of a unanimous verdict has been removed in civil cases (Cal. Const., art. I, § 7); the broad principles of the Fourteenth Amendment prohibit exclusion of Negroes from jury service (see *Neal* v. *Delaware*, 103 U.S. 370, 385 [26 L.Ed. 567]; *Cassell* v. *Texas*, 339 U.S. 282 [70 S.Ct. 629, 94 L.Ed. 839]; *cf. Ballard* v. *United States*, 329 U.S. 187, 193 [67 S.Ct. 261, 91 L.Ed. 181] [women as jurors]; 157 A.L.R. 461); the right to jury trial has been extended to probate matters by statute. (Prob. Code, § 371.)

[7] The court's discretion is more limited, of course, when a new trial is sought on the ground of legal error committed by the trial judge. The constitutional guarantee may well include the right to a jury that has not been misled by irregularities during the trial or by incorrect instructions on the law.

367; 5 Holdsworth, History of English Law, 3d ed. p. 301; Washington, *Damages in Contract at Common Law,* 47 L.Q. Rev. 345, 358.) There never developed an absolute right to a new trial; instead the considerations that govern the court's discretion have always been equitable in nature. Thus, a textbook published at the end of the colonial period states: "As the granting of a new trial is absolutely in the Breast of the Court, they will often govern their discretion by collateral matters; and therefore will not grant a new trial in hard actions, such as case for negligently keeping his fire; nor where the equity of the cause is on the other side." (Buller, J., on Nisi Prius [1785 ed.], p. 326. See, also, 3 Bl.Com. 392 [Jones ed. p. 2004] ; *Wilkinson* v. *Payne,* 4 T.R. 468, 100 Eng.Rep. 1123 [K.B. 1791] ; and cases collected in 2 Salk. 644-653, 91 Eng.Rep. 543-556.) Judicial discretion in ruling on new trial motions has continued to this day. It is well settled in California that the trial court's decision on such a motion will not be reversed on appeal in the absence of a showing of an abuse of discretion. (*Williams* v. *Field Transp. Co.,* 28 Cal.2d 696, 698 [171 P.2d 722] ; *Mosekian* v. *Ginsberg,* 122 Cal.App. 774, 780 [10 P.2d 525].) Even the statute that specifies the grounds for a new trial states only that it "may" be granted if one of those grounds is shown to exist. (Code Civ. Proc. § 657.)

By their motion for new trial, therefore, plaintiffs in effect appealed to the conscience of the court. They cannot complain that the court, viewing all the equities of the case, has selected a more expeditious and less costly method of remedying the alleged injustice of the verdict. The trial judge's solution is reasonable and equitable—plaintiffs are entitled to no more.

2. New trial orders are frequently conditional. At common law a typical condition was that the moving party pay the costs of the first trial. (*Bright* v. *Eynon,* 1 Burr. 390, 97 Eng.Rep. 365; see, also, *Rice* v. *Gashirie,* 13 Cal. 53, 54.) According to Blackstone, the moving party might even be required to consent to a change in the rules of evidence at the second trial. (3 Bl.Com. 392 [Jones ed. p. 2005].) New trials have also been conditioned upon payment of the opposing party's counsel fees (see *Brooks* v. *San Francisco & N. P. R. Co.,* 110 Cal. 173, 174 [42 P. 570]) and upon consenting to go to trial at a particular term of court. (*Nelson* v. *Devney,* 102 F.2d 487, 491.) Similarly, new trials have been refused on condition that the opposing party remit excess damages

(*Hughes* v. *Hearst Publications Inc.*, 79 Cal.App.2d 703, 704 [180 P.2d 419]) and even on condition that certain land awarded by the verdict be excluded from the judgment. (*Fry* v. *Stowers*, 98 Va. 417, 421-423 [46 S.E. 482]; see, also, *Gillespie* v. *Jones*, 47 Cal. 259, 264; *Eaton* v. *Jones*, 107 Cal. 487, 491 [40 P. 798].) There is no impropriety, therefore, in the conditional nature of the new trial order now under review. If new trials can be granted on condition that a certain amount be paid by one party to another, why may they not be denied on the same condition? In each situation the court exercises a sound discretion in the interests of an equitable solution of the case.

There are dicta in some of the common law cases to the effect that the verdict of a jury can be reexamined only by a second jury. (See, for example, *Bright* v. *Eynon*, 1 Burr. 390, 393, 97 Eng.Rep. 365, 366 [K.B. 1757].)[8] It is clear, however, that in making such statements the judges had in mind only the liability issue. On that issue there are but two possible verdicts, and the court can change the jury's decision only by making a directly contrary finding. Invariably the party relying on the verdict would oppose such a change, and to protect that party it was held that any reexamination of the liability issue must be before another jury. An entirely different situation is presented, however, by a motion for a new trial on the ground of excessive or inadequate damages—a situation not considered by the common law judges. In such a case the court is not limited to a complete reversal of the jury's determination and may decide to make only a modification. The party relying on the verdict may prefer that modification to the expense and delay of a new trial; his consent removes the necessity for a second jury.

### III

Although few courts have ruled directly on additur, remittitur has been accepted in almost all states where the question has arisen. (See 53 A.L.R. 783-792; 95 A.L.R. 1166-1168.) Remittitur has been allowed in California for over 100 years. (*George* v. *Law*, 1 Cal. 363, 365; *Hughes* v. *Hearst Publications, Inc.*, 79 Cal.App.2d 703, 704 [180 P.2d 419].) The majority opinion concedes that ''There may be no real

---

[8]Justice Story made a similar statement in *United States* v. *Wonson*, 1 Gall. 5 [28 Fed.Cas. 745, 750], but he approved remittitur in *Blunt* v. *Little*, 3 Mason 102 [3 Fed.Cas. 760].

distinction" between additur and remittitur but finds justification for remittitur in the fact that prior decisions have approved it—"through what appears to have been a misconception of common law procedure." I am not opposed to the continuation of remittitur, for I believe it to be constitutional. I do oppose, however, the argument that, although remittitur and additur are identical in legal principle, the former may be held valid and the latter invalid. The decisions approving remittitur are controlling in any fact situation that is not materially different, and they are therefore controlling here. The first victim of an automobile accident to sue for damages was not turned out of court merely because the closest precedents involved horse-drawn carriages.

To hold remittitur constitutional and additur unconstitutional is not only illogical—it is unfair. In the present case plaintiffs are being given a new trial as a matter of right, and yet, if the second jury allows excessive damages, the trial judge, with plaintiffs' consent, can select a lesser amount and require defendant to pay it. I doubt whether such a procedure accords a defendant the equal protection of the laws.

There is nothing unusual in the fact that early cases permitting remittitur are to be found whereas additur precedents are both few and recent. Courts undertook to grant new trials for excessive damages many years before similar action was taken on the ground of inadequacy. (See McCormick on Damages, pp. 72-73; Washington, *Damages in Contract at Common Law*, 47 L.Q.Rev. 345, 365, n. 7; 46 C.J. 207-213, §§ 152-154.)[9] The issue of additur, therefore, was not presented until modern times. Nevertheless, additur is an equally logical step in the growth of the law relating to unliquidated damages.[10] When the party relying on a verdict consents to a modification by the court, whether that modification be a reduction or an increase, the necessary constitutional protection has been provided.

---

[9] New trials based on inadequacy are still prohibited by statute in some states. (See 66 C.J.S. 258, § 77d.)

[10] A similar development has been the practice of limiting new trials to the damages issue in appropriate cases. The contention that this procedure is unconstitutional (because it was unknown to the common law and results in presenting to the second jury an incomplete version of the case) has been rejected. (*Gasoline Products Co.* v. *Champlin Refining Co.*, 283 U.S. 494, 497-499 [51 S.Ct. 513, 75 L.Ed. 1188].)

In my opinion, therefore, it was not a misconception of common law procedure that prompted Justice Story to allow remittitur in 1822. (*Blunt* v. *Little*, 3 Mason 102 [3 Fed.Cas. 760].) His decision and the unanimous decision of this court in 1851 (*George* v. *Law*, 1 Cal. 363, 365) show that at the time our Constitution was adopted remittitur was not regarded as a violation of the right to jury trial. I do not believe that these early judges were unaware of the purposes of the Bill of Rights and the common law principles governing the granting of new trials.

The remittitur cases attest not only the constitutionality of additur but its practical value as well. Remittitur became an established rule of the law of damages as soon as the practice of setting aside excessive verdicts became general.[11] It has been utilized in innumerable cases to avoid, for both the parties and the courts, the expense and delay of repetitious litigation. In the field of inadequate verdicts, additur can be of similar value.

### IV

The majority opinion relies upon *Dimick* v. *Schiedt*, 293 U.S. 474 [55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150], in which the United States Supreme Court held that additur violates the federal Constitution. That decision is not controlling here, for the Seventh Amendment is not binding upon the California courts. Moreover, there are persuasive arguments for rejecting the reasoning upon which the Dimick case rests.

---

[11]Once the opposition to new trials for excessive damages in cases of torts against the person had been overcome, the English courts utilized remittitur until the decision of the House of Lords in *Watt* v. *Watt*, [1905] A.C. 115. (See *Belt* v. *Lawes*, 12 Q.B.D. 356, 358; *Hurry* v. *Watson*, Tr. 27 G. 3, C.B., 4. T.R. 659, 100 Eng.Rep. 1230.) In this country remittitur is approximately as old as new trials for excessive damages; thus, in ordering a remittitur in 1822 (*Blunt* v. *Little*, 3 Mason 102 [3 Fed.Cas. 760]), Justice Story observed that such new trials had only recently become recognized, and even for that statement he relied exclusively upon dicta in English cases in which new trials had actually been denied. In California remittitur was approved in 1851 (*George* v. *Law*, 1 Cal. 363, 365), only a year after this court had reversed the granting of a new trial for excessive damages. (*Payne* v. *Pacific Mail S. S. Co.*, 1 Cal. 33, 37.) Although medieval cases involving jury attaint are not directly in point, since the principles underlying attaints differed from those governing new trials, it is nevertheless significant that an attaint for excessive damages was barred if plaintiff remitted the excess. (Washington, *Damages in Contract at Common Law*, 47 L.Q.Rev. 345, 349, citing: Y.B. 9 Hen. VI, f.2, pl. 5 [1431]; Y.B. 12 Edw. IV, f.5, pl. 13 [1473]; Y.B. 13 Edw. IV, f.1, pl. 3 [1474].)

The Seventh Amendment provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The first part of the amendment is similar to section 7 of article I of the California Constitution, which reads: "The right of trial by jury shall be secured to all, and remain inviolate." As is pointed out in the majority opinion, the effect of this language is to guarantee the substance of the right to trial by jury as it existed at common law. The second part of the Seventh Amendment, however, is entirely different in spirit and effect, and carries the federal Constitution beyond the substance of the common law right. Thus, in 1830, the United States Supreme Court declared that the second clause was "substantial and independent" of the first. (*Parsons* v. *Bedford,* 3 Pet. (U.S.) 433, 447 [78 L.Ed. 732].) In view of this early interpretation, it is significant that neither the Constitution of 1849 nor the present California Constitution adopted the second part of the federal guarantee.

The restrictive character of the Seventh Amendment language has more than once led the federal courts to follow anomalous rules in dealing with judicial supervision of juries. Thus, it has been held that a federal judge, sitting in a jury case, could direct a verdict when the evidence as a matter of law was conclusive, but could not enter judgment notwithstanding the verdict after he had erroneously failed to direct the verdict and the jury had erroneously found for the opposing party. (*Slocum* v. *New York Life Ins. Co.,* 228 U.S. 364, 399 [33 S.Ct. 523, 57 L.Ed. 879].) The reason for this distinction was that, after a verdict has been returned, a federal court is limited by the second clause of the Seventh Amendment to the formal procedure of the common law. Since the California Constitution guarantees only the substance of jury trial, judgment notwithstanding the verdict is available in this state in cases where directed verdicts are proper. (Code Civ. Proc., § 629; *Estate of Baird,* 198 Cal. 490, 506 [246 P. 324].)

It is apparent that in the Dimick case the problem of constitutional construction facing the United States Supreme Court was materially different from that presented here. (See 44 Yale L.Jour. 318, 324-325.) The court concluded that additur involves a reexamination of the damages issue after

the jury has tried that question, and, since no common law precedent for the practice was found, it was held to be a prohibited innovation. The long-standing practice of remittitur in the federal courts was justified on the ground of a century of acceptance under the Constitution.

Even under the narrow language of the Seventh Amendment, the United States Supreme Court had great difficulty in reaching the conclusion that additur is unconstitutional. The decision in the Dimick case was by a bare majority of five Justices, and Justice Stone, with whom Chief Justice Hughes and Justices Brandeis and Cardozo concurred, filed a well-reasoned dissenting opinion. The dissent emphasizes the broad discretion of the common law judges in ruling on new trial motions, the essential identity of additur and remittitur, the dangers of too rigid a construction of constitutional provisions, and "the generally recognized advantages of the practice as a means of securing substantial justice and bringing the litigation to a more speedy and economical conclusion than would be possible by a new trial to a jury. . . ." (293 U.S. 474, 490 [55 S.Ct. 296, 79 L.Ed. 603, 95 A.L.R. 1150].)